**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darrel Richard SMITH, Defendant–
Appellant.**

**No. 99–10171.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 2000

Submission withdrawn Jan. 19, 2000

Resubmitted April 5, 2000

Filed June 29, 2000

---

3. One lawyer practices in Arlington, Virginia, while the other practices in Las Vegas, Nevada.

Richard E. Gardiner, Fairfax, Virginia, for the defendant-appellant.

J. Walter Green, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

Before: ALARCON, TASHIMA and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Defendant Darrel Richard Smith appeals his conviction and sentence following a jury trial. Smith was convicted of violating 18 U.S.C. § 922(o)(1), possession of a machine gun. Smith argues that the district court erred in denying his motion to suppress the evidence obtained as a result of an investigatory stop of his vehicle. Furthermore, he asserts that 18 U.S.C. § 922(o)(1) exceeds Congress' power under the Commerce Clause and is therefore unconstitutional.

Smith also contends that the district court erred in refusing to give a proffered jury instruction relating to his theory of the case. Finally, Smith argues that the district court improperly added two points to his criminal history pursuant to U.S.S.G. § 4A1.1(e), which provides for a two point increase if the instant offense was committed within two years of the defendant's release from imprisonment.

We have jurisdiction over this appeal under 28 U.S.C. § 1291, and we affirm in part, reverse the judgment of conviction and remand for further proceedings.

## I. Background

On Sunday, February 2, 1997, Smith drove his tan colored van to the wash at the end of Jones Boulevard in Las Vegas, Nevada. Smith drove into the wash past three other individuals, including an off-duty police officer, who were conducting target practice. Smith stopped his van approximately 75 to 100 yards away from the other individuals and near the remains of a blue Suburban which had been stripped and abandoned. Smith left his vehicle and looked at the Suburban. He then removed a rifle from his vehicle, pointed the weapon at the nearby hill and fired the rifle in fully automatic mode, releasing thirty or forty rounds.[1] Smith replaced the rifle in the van, and began to drive out of the retention basin.

Meanwhile, a police helicopter was in the area responding to a report that a blue Suburban matching the description of a stolen vehicle had been spotted in the wash. The officers in the helicopter observed Smith looking at the Suburban. Just after Smith began to drive over the wash, the helicopter flew over, alerting all of the individuals in the wash to its presence. After the helicopter passed, Smith stopped his van, moved the rifle to the back of the van and then continued out of the wash. The helicopter followed. The officers in the helicopter radioed to Las Vegas Metro Police Officer Cory Estes, who had been investigating the stolen Suburban, that an individual in a tan van had been observed looking at the Suburban in the wash, and that the van was leaving the wash in an "expeditious or quick manner." Officer Estes drove up Jones Boulevard and observed the tan van approaching him with the police helicopter following it. Of-

---

**1.** Smith contends that he fired two single shots before the weapon was discharged fully    automatic.

ficer Estes pulled his vehicle at an angle and activated his lights. A pickup truck traveling down Jones Boulevard in front of the van immediately pulled to the side of the road and stopped. The van then made an unsuccessful maneuver that appeared to the officer to be an attempt to make a U-turn. Having failed to turn around, the van proceeded back towards the officer and appeared to be speeding up. Officer Estes exited his vehicle and yelled at Smith to stop. Believing that the van was not going to stop and was either going to try to drive around or into the police car, Officer Estes drew his firearm and pointed it at the van. Smith veered to the right and stopped. Smith got out of his vehicle with his arms raised and yelled something to the effect of "I didn't do anything." Officer Estes patted down Smith for weapons, and questioned him about his reasons for being in the area. After checking Smith's identification, Officer Estes learned that Smith had two previous convictions and was therefore required to register with his local police department. After a records check indicated that Smith had not registered, Officer Estes arrested him for failure to register. A subsequent inventory search of the vehicle resulted in the recovery of Smith's rifle.

Smith was indicted on one count of manufacturing a machine gun in violation of 26 U.S.C. § 5861(f) and one count of possession of a machine gun in violation of 18 U.S.C. § 922(o)(1).

At jury trial, Smith testified that he had attended a gun show on the day before the incident in the wash. He testified that he brought to the gun show a semiautomatic rifle's lower receiver which he had purchased at a previous show. Smith testified that he paid an individual at the show whose identity he did not know to provide the rest of the components of the weapon and to assemble the rifle. Smith testified that he did not request him to construct a fully automatic weapon. Smith testified that he had intended to purchase, and had believed he had purchased, a semiautomat-

ic weapon. Smith testified that he had taken the weapon to the wash to test it, and upon discovering the weapon capable of fully automatic fire, was in the process of returning to the gun show to demand that the unknown individual restore the weapon to fire only semiautomatically when he was stopped. Smith requested a jury instruction consistent with the theory of defense presented by his testimony, which the district court refused to give.

Smith was acquitted of manufacturing a machine gun, but was convicted of possession of a machine gun in violation of 18 U.S.C. § 922(o)(1). This direct appeal ensued.

## II. Discussion

### A. The investigatory stop.

■■■ The Fourth Amendment permits limited investigatory stops where there is some reasonable, articulable, and objective manifestation that the person seized is, or is about to be, engaged in criminal activities. *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980); *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996). Whether reasonable suspicion existed to justify an investigatory stop is a mixed question of law and fact which is subject to de novo review. *United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989). In order to determine if reasonable suspicion existed to justify an investigatory stop, the court must consider the facts available to the officer at the moment of seizure. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

The government argues that four factors known to Officer Estes establish reasonable suspicion. First, Officer Estes knew that Smith had been seen looking at a stripped vehicle matching the description of a stolen car. Second, the officers in the helicopter had reported that the suspect was leaving the scene in an "expeditious" manner, which Officer Estes defined as "[q]uickly, like evasively." Third, upon

seeing Officer Estes's marked police vehicle with the lights activated, Smith took actions that the officer interpreted to be an attempt to turn around. Fourth, after failing to turn around, the van driven by Smith approached the officer at a high rate of speed, causing the officer to become concerned that Smith might be attempting to flee or ram the officer and his vehicle.

■ Smith, relying on *United States v. Morrison*, 546 F.2d 319, 320 (9th Cir.1976), argues that only the factors present up to the point when Officer Estes turned on the lights of his patrol car can be considered in analyzing the validity of the stop. *Morrison* held that a suspect was "seized" for purposes of the Fourth Amendment once the officer communicated the command to stop by turning on his lights. *Id.* *Morrison's* conclusion that seizure occurs at the moment a command to stop has been issued, however, was overruled by the Supreme Court in *California v. Hodari D.*, 499 U.S. 621, 625–26, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). *See also United States v. Santamaria–Hernandez*, 968 F.2d 980, 982–83 (9th Cir.1992) (recognizing that *Morrison* has been overruled). *Hodari D.* held that no seizure occurs if a suspect does not yield in response to a show of authority; seizure only occurs when either the suspect is physically subdued or submits to the assertion of authority. 499 U.S. at 625–26, 111 S.Ct. 1547; *Santamaria–Hernandez*, 968 F.2d at 982–83.

■ In the instant case Smith did not immediately submit to Officer Estes's show of authority. Instead, he attempted to take evasive action and turn around. Evasive actions contribute to the totality of circumstances suggesting reasonable suspicion. *Illinois v. Wardlow*, —— U.S. ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). Having failed to turn around, Smith then took a threatening posture by accelerating towards Officer Estes and his car. This was an aberrant response to a facially legal command by a police officer and contributes to a reasonable suspicion

criminal activity may be afoot. Coupled with the fact that Officer Estes knew that Smith had been observed looking at a stripped vehicle matching the description of a stolen car and had then left the scene in an "expeditious" manner, and considering all factors in the "totality of the circumstances," *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), we find there was reasonable suspicion to justify the investigatory stop.

**B. The Constitutionality of Title 18 U.S.C. § 922(o)(1).**

■ Smith contends that 18 U.S.C. § 922(o)(1) exceeds Congress's power under the Commerce Clause of the Constitution. However, this Court, in *United States v. Rambo*, held that "section 922(o) is a proper exercise of the authority granted to Congress under the Commerce Clause." 74 F.3d 948, 952 (9th Cir.1996). We therefore affirm the district court's ruling that 18 U.S.C. § 922(o)(1) does not exceed Congress's power under the Commerce Clause of the Constitution.

**C. Jury instructions.**

■ "It is reversible error to fail to instruct as to a defendant's defensive theory if the record contains evidentiary support for the theory and the theory is supported by law. Yet, it is not required that a jury be instructed in line with the chosen words of the accused." *United States v. Davis*, 597 F.2d 1237, 1239 (9th Cir.1979) (citations omitted). Whether the instructions given adequately present the defendant's theory of the case is reviewed de novo. *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir.1997). A reviewing court must determine if an erroneous jury instruction was harmless. *Coleman v. Calderon*, 210 F.3d 1047, 1048 (9th Cir.2000)

■ Smith argues that the district court should have given the "theory of defense" instruction he requested. He requested the following instruction:

**751**

If you find ... [t]hat, prior to learning that the firearm shot automatically more than one shot, without manual reloading, by a single function of the trigger, the defendant believed it was a semiautomatic firearm (i.e., a firearm which requires a function of the trigger for each shot) and, upon learning that the firearm shot automatically more than one shot, without manual reloading, by a single function of the trigger, promptly initiated action to have the firearm modified to a semiautomatic firearm, you shall find the defendant not guilty.

The district court refused to give Smith's instruction but instead instructed the jury that it had to find that Smith "knowingly possessed a machine gun." The district court instructed the jury that "an act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident."

The refusal to give Smith's instruction might have been harmless had the prosecutor not argued to the jury that " ... even if you believe [Smith's] story about the fact that he didn't know it was a machine gun, once that was a machine gun that was firing on that hill, ... [t]hat's when he has possession and control of that weapon at the very least, because he can control it." This argument told the jury that the crime was completed as soon as Smith fired the gun and discovered that it was an automatic regardless of whether Smith had come into possession of the weapon by mistake or accident. This argument substantially misstated the law on the key issue in the case and, in light of the context of the trial, underscores why Smith's requested instruction should have been given. *Cf. Coleman,* 210 F.3d at 1051. Consequently, we reverse the judgment of conviction and remand for new trial.

### D. Criminal history enhancement.

Smith asserts that the district court improperly added two points to his criminal history pursuant to U.S.S.G. § 4A1.1(e).

As we have reversed the judgment of conviction, we do not reach this issue.

### III. Conclusion

For the reasons stated above, the decisions of the United States District Court for the District of Nevada with regard to the motion to suppress and the motion to dismiss are AFFIRMED. The judgment of conviction is REVERSED and this case is REMANDED for further proceedings not inconsistent with this opinion.