UNITED STATES of America,
Plaintiff–Appellee,

v.

Roberto DUARTE–HERNANDEZ,
Defendant–Appellant.

No. 00–50492.
D.C. CR–00–00118–IEG.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 2001.

Decided June 15, 2001.

Before HUG, and DUHÉ,* and
TALLMAN, Circuit Judges.

MEMORANDUM **

Roberto Duarte–Hernandez ("Duarte–Hernandez") appeals his conviction for transportation of illegal aliens. He contends that Border Patrol Agents (the "Agents") decided on the basis of his ethnicity to stop a van in which he was trans-

---

* The Honorable John M. Duhé Jr., Senior Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

porting nine illegal aliens and seize him. Duarte–Hernandez argues that this seizure violated his Fifth Amendment right to equal protection of the laws and his Fourth Amendment right to be free from unreasonable searches and seizures. Duarte–Hernandez argues that reasonable suspicion did not justify his seizure and that probable cause did not support the Agents' deployment of a tire-deflating tack strip to stop his vehicle.

Because Duarte–Hernandez waived his equal protection argument by not presenting it to the District Court and because reasonable suspicion justified the Agents' seizure of Duarte–Hernandez, we affirm.

## BACKGROUND

One afternoon in January 2000, two United States Border Patrol Agents (Agents "Medhurst" and "Olvera") stood at the intersection of Highways 86 and S–22 in Imperial County, California, and chatted with a local resident. This intersection lies about 40 to 50 miles north of the U.S.-Mexico border. As the three chatted, Agent Medhurst noticed a van traveling northbound on Highway 86. Smugglers of illegal aliens often travel north along Highway 86 from Mexico into the interior of the United States. Sagging in the rear, the van appeared to be carrying a heavy load.

From where he stood, Agent Medhurst could see only two people in the van, who were seated in the driver's seat and the front passenger seat. Duarte–Hernandez was the driver. As the van approached the Agents, Duarte–Hernandez and the passenger in the front seat faced and were talking to each other. Duarte–Hernandez and his interlocutor stiffened as the vehicle neared the Agents. As the van passed, Agent Medhurst testified, they sat up "ramrod straight" and "look[ed] straight ahead and failed to make any kind of eye contact" with the Agents.

Suspicious, the agents followed the van in their marked Border Patrol vehicles. Agent Olvera passed the van and drove ahead to prepare a tire deflation device in the event that Agent Medhurst, who was behind the van, activated his lights and siren and the van refused to stop. The van slowed from about 50 to about 40 miles per hour while Agent Medhurst followed it. Agent Medhurst testified that in his experience, "vehicles containing illegal aliens in them will often slow down in an attempt to get a marked Border Patrol vehicle to pass them."

Agent Medhurst, the district court found, activated his lights and siren after the van slowed down.[1] After he activated his lights and siren, the van did not slow down, speed up, or change course in any respect. Agent Medhurst radioed Agent Olvera that the van was failing to yield, and Agent Olvera obtained permission, to place the tire deflator across the highway. Agent Medhurst continued to follow the van with his emergency lights on, but turned off his siren after one or two more minutes.

Shortly thereafter, Agent Olvera placed the tire deflator across the highway. It punctured the van's left front tire as Duarte–Hernandez drove over it. After the tire was punctured, Duarte–Hernandez continued to drive the van without braking. Eventually, he turned the van into a residential neighborhood. Without bringing the van to a stop, Duarte–Hernandez jumped out and fled on foot. The Agents found him hiding under a porch behind a home.

In the van were nine undocumented aliens.

1. Duarte–Hernandez disputes this finding. The District Court, however, did not clearly err in determining that Agent Medhurst activated his lights and siren.

## DISCUSSION

### I. Equal Protection

 Duarte–Hernandez waived his equal protection claim by not presenting it to the District Court. Duarte–Hernandez contends that the Agents stopped his van and seized him on the basis of his ethnicity, that the stop and seizure, therefore, violated his Fifth Amendment right to equal protection of the laws, and that we should remedy this equal protection violation by suppressing the evidentiary fruits of the stop. Duarte–Hernandez did not present this argument to the District Court.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure and the prudential rules of this court prohibit him from presenting it for the first time here. Rule 12(b)(3) requires that parties move to suppress evidence before trial. Fed. R.Crim.P. 12(b)(3). Parties waive suppression claims under Rule 12(b)(3) when they fail to timely move for suppression. *Id.* Parties also waive suppression claims under this rule when they fail to raise particular grounds of support for those claims. *United States v. Wright,* 215 F.3d 1020, 1026 (9th Cir.2000) ("By failing to comply with Rule 12, [defendant] waived any dispute about the legality of his arrest"); *United States v. Restrepo–Rua,* 815 F.2d 1327, 1329 (9th Cir.1987). More generally, this court usually declines to consider on appeal issues not raised in the District Court. *See United States v. Cormier,* 220 F.3d 1103, 1113 (9th Cir.2000).

### II. The Fourth Amendment and Reasonable Suspicion

The District Court correctly determined that reasonable suspicion justified the Agents' seizure of Duarte–Hernandez.

 Duarte–Hernandez contends that Agent Medhurst unreasonably seized him when he activated his vehicle's lights and siren without reasonable suspicion that Duarte–Hernandez was involved in criminal activity. *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), and its Ninth Circuit progeny indicate that Duarte–Hernandez was seized not when Agent Medhurst activated his lights and siren, but when the Agents arrested him after finding him hiding under the porch. *See Hodari D.,* 499 U.S. at 626, 111 S.Ct. 1547 ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not"); *United States v. Santamaria–Hernandez,* 968 F.2d 980, 983 (9th Cir.1992) ("We conclude, then, that Santamaria was not 'seized' for Fourth Amendment purposes until he was physically apprehended by the border patrol agents at the end of the chase").[2]

---

**2.** *See also United States v. Smith,* 217 F.3d 746, 750 (9th Cir.2000) ("Smith, relying on *United States v. Morrison,* 546 F.2d 319, 320 (9th Cir.1976), argues that only the factors present up to the point where Officer Estes turned on the lights of his patrol car can be considered in analyzing the validity of the stop. *Morrison* held that a suspect was 'seized' for purposes of the Fourth Amendment once the officer communicated the command to stop by turning on his lights. *Id. Morrison*'s conclusion that seizure occurs at the moment a command to stop has been issued, however, was overruled by the Supreme Court in *California v. Hodari D.* [.] ... *Hodari D.* held that no seizure occurs if a suspect does not yield in response to a show of authority; seizure only occurs when either the suspect is physically subdued or submits to the assertion of authority"). *Smith* vitiates Duarte–Hernandez's argument that the Fourth Amendment required that the Agents have probable cause before deploying the tire deflator. Duarte–Hernandez contends that the latest temporal point at which a "seizure" occurred in the sequence of events described above was when the Agents deployed the tire deflator. Because the Agents' use of the tire deflator involved the application of physical force, Duarte–Hernandez continues, the Fourth Amendment required that the Agents

■ Reasonable suspicion justified Duarte–Hernandez's seizure. We determine whether reasonable suspicion sufficient to justify a stop existed by evaluating the facts available to law enforcers at the moment of seizure. *Smith,* 217 F.3d at 749. Since the facts available to the Agents at the moment they seized Duarte–Hernandez—including the fact of his flight from the Agents' several "shows of authority" (the activation of the lights and siren and the deployment of the tire deflator)—indicated that Duarte–Hernandez was involved in criminal activity, reasonable suspicion justified his stop and seizure. *See Santamaria–Hernandez,* 968 F.2d at 983 ("The determination whether agents have reasonable suspicion to justify a stop may take into account all of the events that occur up to the time of physical apprehension of a suspect who flees"); *Smith,* 217 F.3d at 750 ("In the instant case, Smith did not immediately submit to Officer Estes's show of authority. Instead, he attempted to take evasive action and turn around. Evasive actions contribute to the totality of circumstances suggesting reasonable suspicion").

## CONCLUSION

As Duarte–Hernandez waived his equal protection argument by not presenting it to the District Court, and reasonable sus-

picion justified the Agents' seizure of Duarte–Hernandez, we affirm.

AFFIRMED.

---

have probable cause before using it. Since they did not, Duarte–Hernandez concludes, his seizure violated the Fourth Amendment. This argument fails. The tire deflator did not physically subdue Duarte–Hernandez and did not cause him to submit to the Agents' show of authority. The Agents' use of the tire deflator, therefore, was not a seizure subject to Fourth Amendment scrutiny.

