UNITED STATES of America, Plaintiff,

v.

Sam Tong CHAN, et al., Defendants.

No. CR–92–0589 DLJ.

United States District Court, N.D. California.

Aug. 31, 1993.

---

Steven F. Gruel, Asst. U.S. Atty., for U.S.

Arthur K. Wachtel, with Horngrad & Wachtel of San Francisco, CA, for defendant Qiang Jing Ma.

Stuart Hanlon, with Tamburello, Hanlon, Brisciani and Waggener, San Francisco, CA, for defendant Sam Tong Chan.

## AMENDED ORDER

JENSEN, District Judge.

On June 23, 1993, the following motions by defendants Qiang Jing Ma ("Ma") and Sam Tong Chan ("Chan") were scheduled to be heard by the Court: (1) Ma's motion to suppress his post-Miranda statements; (2) Chan's motion for discovery regarding special agent Stephen Tse; (3) Chan's motion to suppress evidence; and (4) Chan's motion to sever trials. Steven F. Gruel, Assistant U.S. Attorney, appeared on behalf of the United States. Stuart Hanlon of Tamburello, Hanlon, and Waggener appeared on behalf of defendant Sam Tong Chan ("Chan"). Motions (1) and (4) were withdrawn by defendants, and motion (2) was deferred at the hearing.

Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court hereby DENIES defendant Chan's motion to suppress evidence.

## I. BACKGROUND

Defendants Qiang Jing Ma and Sam Tong Chan are charged in a two-count indictment alleging (1) a violation of Title 21 U.S.C. § 846 (conspiracy to possess with intent to distribute approximately 700 grams of heroin) and (2) a violation of Title 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (possession with intent to distribute and aiding and abetting in the possession with intent to distribute the same heroin).

On November 17, 1992, Special Agent Steven Y. Tse ("Agent Tse") arranged to meet with defendant Ma at an undercover room

(Room 256) at the Best Western El Rancho Motel in Milbrae, California. Ma told Agent Tse, who was acting in his undercover capacity, that heroin would be delivered to the motel room. Ma used the motel room's telephone to page an unknown individual, and shortly thereafter another unidentified individual phoned back and spoke with Ma about the delivery of the heroin. Ma told the caller to bring one package of "cigarettes" and to come to the motel's parking lot, where Ma would be waiting for him. Following that conversation, Ma told Agent Tse that he would deliver an unspecified number of units of heroin every ten minutes. Ma subsequently left the motel room and then returned with a bag of heroin. Thereupon, Tse and other DEA agents arrested Ma.

Meanwhile, DEA Special Agent Peter Colichadas ("Agent Colichadas") observed defendant Chan outside the motel. Agent Colichadas watched Chan walk into the motel parking lot, where he was picked up by Ma in a 1984 Buick. Ma drove to Room 256 of the motel, parked outside, and then exited the vehicle. After Ma's departure, Chan exited the vehicle and was arrested.

At the time of defendant Chan's arrest (approximately two minutes after the actual arrest, according to Agent Colichidas), the DEA seized an electronic pager that was in Chan's possession. Declaration of Peter Colichidas, ¶ 4, at 2. The DEA subsequently searched the pager incident to the arrest by activating its memory and retrieving certain telephone numbers that were stored in the pager. Two numbers, 588-8500, likely indicating the telephone number of the Best Western El Rancho Motel in Milbrae, and 256, likely indicating the room number where the drug negotiation with Agent Tse occurred, were found in the pager. No heroin was found on Chan and no warrant had been obtained to seize and activate the pager. Following his arrest, defendant Ma stated that the pager belonged to him and that he had lent it to Chan.

Defendant Chan now submits that the activation of this pager was a search requiring a warrant because the pager was a container in which defendant had a reasonable expectation of privacy. Chan reasons (1) that he

had a legitimate expectation of privacy in the borrowed pager and (2) that the retrieval of numbers constituted a search, which was not justified as a warrantless search incident to an arrest or as a warrantless search involving exigent circumstances.

The government contends that the warrantless search of Ma's pager was valid. According to the government, Chan has no standing to contest the search of the pager. The government further asserts that Ma had no expectation of privacy in the seized pager. Even if Ma had a legitimate expectation of privacy, the government argues, that privacy interest was destroyed as the result of (1) a lawful search incident to arrest, or (2) exigent circumstances surrounding the search.

## II. DISCUSSION

### A. Chan's Privacy Interest in the Seized Pager

#### 1. Legal Standard

A person has an interest that warrants Fourth Amendment protection when that person maintains a legitimate expectation of privacy in the invaded property. *Rakas v. Illinois*, 439 U.S. 128, 142–46, 99 S.Ct. 421, 430–431, 58 L.Ed.2d 387 (1978). In determining whether an individual's Fourth Amendment rights have been violated, property ownership is a factor to be considered, but it is not determinative. *United States v. Salvucci*, 448 U.S. 83, 91–93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). *See e.g. Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (an overnight guest in an apartment had an expectation of privacy in the premises which was protected by the Fourth Amendment). The relevant inquiry is two-fold: (1) whether the individual has exhibited an actual (subjective) expectation of privacy; (2) whether the expectation is one which society recognizes as "reasonable." *Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

#### 2. Standing to Sue

As a preliminary matter in this case, there is a factual dispute as to who is the true owner of the pager. Originally, both

parties asserted that Ma owned the pager, and that he had lent it to Chan. In accordance with this version of the facts, defendant Chan argued that he had an interest in the pager as a result of it being lent to him for his use. Now, the DEA has released further documents indicating that the pager is registered to a person with the same last name as defendant Chan and with an illegible three letter first name beginning with an "S," which the DEA reads as "Sun." In the alternative to the lending theory, defendant Chan argues that if the illegible first name is actually "Sam," then Chan has a clear ownership interest.

The Court finds that the pager's ownership is not dispositive of Chan's standing to bring the motion to suppress. Regardless of whether the pager belonged to Ma or "Sun," there has been no showing that the pager was not legitimately obtained. Chan presumably maintained a subjective expectation that a borrowed item kept on his person would be free from governmental invasion. Furthermore, it is "reasonable" that one would have expectations of privacy in an item carried on one's person. Accordingly, Chan has standing to bring this motion as long as the expectation of privacy in a *pager* is one which society deems "reasonable."

3. Expectation of Privacy in a Pager

■ A warrant may be required to search the contents of a container when its owner's expectation of privacy relates to the contents of that container, rather than to the container itself. *United States v. Chadwick*, 433 U.S. 1, 10–11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977). Similarly, an officer's authority to possess a package is distinct from his authority to examine its contents. *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Court found reasonable expectation of privacy in contents of film carton). *See also United States v. David*, 756 F.Supp. 1385 (D.Nev.1991) (defendant's computer memo book entitled to same Fourth Amendment protection as any other closed container).

The expectation of privacy in a pager, while analogous to other closed containers, has apparently never been addressed by the Ninth Circuit. In the only federal appellate case dealing with this subject, the Sixth Circuit found that the transmitter of a number to an electronic pager had no expectation of privacy when the number was subsequently seized from the pager. *United States v. Meriwether*, 917 F.2d 955 (6th Cir.1990). The context in which the issue arose in *Meriwether*, however, differs significantly from the case at hand. There, a government agent seized a pager from a suspected drug dealer pursuant to a warrant which authorized the agent to search for and seize "telephone numbers of customers, suppliers, and couriers." The pager was seized in the "on" position, and the agents subsequently recorded the next forty telephone numbers received by the pager. The agents randomly chose the defendant's number from among the forty, and arranged a drug deal which led to the defendant's arrest.

The Sixth Circuit rejected the defendant's argument that he had a reasonable expectation of privacy when he transmitted the number to the pager. The court reasoned that when a person sends a message to a pager, he or she runs the risk that the message will be received by whomever is in possession of the pager. The expectation of privacy is less than when making a phone call because the transmitter has no control over, or knowledge of, who is receiving the message. Additionally, the court found that the seizure was within the scope of the warrant because it considered the pager analogous to a personal telephone book.

■ The Court declines to apply the reasoning of *Meriwether* to this case. The instant case, unlike *Meriwether*, deals with the privacy rights of the person in possession of the pager. In contrast to the transmitter of a message to a pager, the possessor of the pager has control over the electronically stored information. The expectation of privacy in an electronic repository for personal data is therefore analogous to that in a personal address book or other repository for such information.

*United States v. Nelson Blas*, 1990 WL 265179, 1990 U.S.Dist. Lexis 19961 (E.D.Wis. 1990), appears to be the only federal case

which addresses the privacy rights of a person in possession of a pager. In that case, a government agent obtained numbers from a pager which the defendant allowed the agent to "look at." The defendant claimed that his consent to "look at" the pager permitted the agent only to look at the device, not activate it. The court agreed, reasoning that:

> an individual has the same expectation of privacy in a pager, computer or other electronic data storage and retrieval device as in a closed container, and granting consent to "look at" the container is not a grant of consent to look into the contents of the container. The expectation of privacy in the contents of a container is different from the individual's expectation of privacy in the outward appearance of the container. Likewise, the expectation of privacy in the contents of a pager is different from the individual's expectation of privacy in the outward appearance of the pager.

*Blas,* at * 21. The court concluded that the telephone numbers obtained from the pager should be suppressed because the defendant's consent did not extend to the contents of the pager.

▇ The Court finds that Chan's expectation of privacy in the seized pager is analogous to that of the defendant in *Blas.* While the instant case does not revolve around a consent issue, the Court concurs with the reasoning in *Blas* and finds that Chan had a reasonable expectation of privacy in the contents of the pager's memory.

**B. *The Effect of a Search Incident to Arrest***

▇ Although Chan had a protected privacy interest in the contents of the pager's memory, it is irrelevant in this case because the pager was searched incident to Chan's arrest. When making a lawful arrest, police may conduct a warrantless search of the area "within the arrestee's immediate control, that is, 'the area from within which he might gain possession of a weapon or destructible evidence.'" *United States v. Turner,* 926 F.2d 883, 887 (9th Cir.1991) (quoting *Chimel v. California,* 395 U.S. 752, 762–64, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). Such a search must be conducted at "about the same time as the arrest." *United States v. An-dersson,* 813 F.2d 1450, 1456 (9th Cir.1987). An officer may also search the contents of a container found on or near the arrestee in a search incident to arrest. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). As stated in *Belton:*

> Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*Id.* 453 U.S. at 461, 101 S.Ct. at 2864.

In this case, defendant Chan argues that the activation of the pager's memory was not justified by a search incident to Chan's arrest. Chan cites *Chadwick* for the proposition that even when a container is seized incident to arrest, a separate warrant is required to search the contents of a closed container when an individual maintains a high expectation of privacy in the contents of that closed container. *See Chadwick,* 433 U.S. at 12–13, 97 S.Ct. at 2484.

*Chadwick* does not provide the broad protection which defendant asserts. The Court in *Chadwick* adopted a narrow exception to the incident to arrest doctrine, holding that a warrantless search of seized property cannot be justified when the search is remote in time or place from the arrest. *Chadwick,* 433 U.S. at 13–15, 97 S.Ct. at 2485. As the Supreme Court explains:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Id.*

▇ Here, the retrieval of numbers from the pager's memory was not so remote from Chan's arrest as to fall within the exception provided in *Chadwick.* In *Chadwick,* federal agents conducted a warrantless search of the defendant's footlocker more than an hour after they gained exclusive control of the

footlocker. The search was clearly remote in time and space. In contrast, there was not a great lapse of time between the seizure of the pager and the search of its contents in this case; in fact, the delay lasted only minutes. Additionally, the pager was the product of a search of Chan's person, whereas the footlocker in *Chadwick* was obtained from the trunk of the defendant's car. While there was no danger that Chan would in any way produce a weapon from the pager, and probably no threat that he would access the pager to destroy evidence, the Court is unwilling to characterize a search conducted within minutes of arrest as "remote in time and space." *Chadwick* is therefore not controlling.

The government cites *United States v. Holzman*, 871 F.2d 1496 (9th Cir.1989), and related cases, for the proposition that an initial valid search incident to an arrest destroys a defendant's expectation of privacy in a subsequent search. In *Holzman*, an address book was seized from Holzman's person during a lawful arrest and immediately examined by the police. The defendant moved to suppress evidence that was produced from a subsequent search at the station house. The court distinguished the case from *Chadwick* and others in which the invalidated search occurred subsequent to arrest, at a remote time and place. The court reasoned that: "Remoteness becomes an issue only if an individual retains an expectation of privacy in the seized property; there is no continued expectation of privacy if it has been effectively destroyed by a valid search incident to arrest." *Holzman*, 871 F.2d at 1505. Thus the court held that both the initial search of the address book and the subsequent search of its contents were valid.

As in *Holzman*, defendant Chan's expectation of privacy was destroyed as the result of a valid search incident to an arrest. In fact, Chan does not dispute that the pager was legally seized incident to his arrest, but contends rather that a separate warrant was required prior to a search of the pager's memory. However, the general requirement for a warrant prior to the search of a container does not apply when the container is seized incident to arrest. *See Belton*, 453

U.S. at 460–61, 101 S.Ct. at 2864. The search conducted by activating the pager's memory is therefore valid.

As the valid search of the pager incident to Chan's arrest destroyed Chan's privacy interest in the pager's contents, the Court need not address the government's arguments concerning exigent circumstances.

Accordingly, the Court DENIES defendant Chan's motion to suppress the information obtained from the activation of the pager's memory.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant Chan's motion to suppress evidence obtained from the seized pager is DENIED.

IT IS SO ORDERED.