**UNITED STATES of America,**
**Plaintiff,**

v.

**Manuel M. SANTILLAN, Defendant.**

**No. CR 07–2015 TUC JMR.**

United States District Court,
D. Arizona.

July 14, 2008.

Matthew Charles Davidson, Law Offices of Matthew C. Davidson Ltd., Nogales, AZ, for Defendant.

Nicolle Jacqueline Krivda, U.S. Attorneys Office, Tucson, AZ, for Plaintiff.

## ORDER

JOHN M. ROLL, Chief Judge.

This order resolves the Motion to Suppress filed by defendant Manuel M. Santillan in connection with the seizure of a cell phone from him on November 5, 2007, and his subsequent indictment for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. An evidentiary hearing was conducted on June 30–July 1, 2008. For the reasons set forth below, the Motion to Suppress (Doc. No. 27) is **DENIED.**

### Factual Background

At the evidentiary hearing held in this matter, the evidence consisted of two government witnesses. At approximately 3:00

p.m. on November 5, 2007, Immigration & Customs Enforcement ("ICE") Agent Frank Acevedo observed the defendant in the vicinity of Duquesne Road and State Route 82 (hereinafter S.R. 82), in southern Arizona, near Nogales, Arizona. Duquesne Road extends southeast of S.R. 82 toward the international border with Mexico. Although it is paved for a short distance immediately south of S.R. 82, it then becomes a dirt road.

The defendant was jogging back and forth while speaking on a cell phone. He was paying close attention to traffic in the area, especially traffic along. Duquesne Road. The defendant would never go farther than 100 yards in one direction before turning to go in the opposite direction. While observing the defendant, Agent Acevedo saw a heavy dust trail in the distance, indicating traffic traveling on Duquesne Road toward S.R. 82. Agent Acevedo observed three trucks emerge from Duquesne Road and enter S.R. 82. The three trucks were traveling in tandem at a high rate of speed and were all full of dust. Through the use of binoculars, Agent Acevedo was able to observe that two of the three trucks had been modified in a manner that suggested they were being used to smuggle drugs. Based upon the behavior exhibited by the defendant and the approaching trucks, Agent Acevedo concluded that the defendant was likely a spotter or scout for some type of drug smuggling activity.

Agent Acevedo attempted to follow the trucks, but even at speeds approaching 100 miles per hour, he was unable to catch up with the vehicles. He issued a command to other agents and law enforcement personnel in the area that boards or other devices be utilized to stop the trucks. He then observed the trucks heading back toward Duquesne Road. Agent Acevedo concluded that the truck drivers likely believed that they had been detected by law enforcement and had turned around in an attempt to escape back into Mexico.

In the interim, Agent Eddie Cota had been advised by Agent Acevedo of the defendant's actions. Agent Cota approached the area of Duquesne Road and S.R. 82 and observed the defendant in that area. The defendant was still walking back and forth on S.R. 82 and talking on the cell phone. Agent Cota approached the defendant, identified himself as a Customs agent, and showed his credentials to the defendant. Agent Cota told the defendant to stop talking on the cell phone. The defendant ignored Agent Cota's demand and continued speaking on the cell phone. Agent Cota feared that the defendant would use or was using his cell phone to communicate to the occupants of the three trucks that law enforcement personnel were in the area. When the defendant ignored a second demand to stop talking, Agent Cota removed the phone from the defendant and secured it on his person.

Agent Cota told the defendant to get down on the ground and informed him he was being detained. The defendant asked why he was being detained and asserted that he was only jogging. When Agent Cota attempted to physically restrain the defendant, the defendant complained that he had a bad back. Eventually, however, the defendant was physically placed on the ground by Agent Cota and told not to move. At that time, Agent Cota walked back to his car to get handcuffs. While on his way he received a radio broadcast from Agent Acevedo, informing him that the vehicles had turned around and were coming back toward Duquesne Road. Agent Cota, who was the senior officer in the investigation, quickly realized that the suspect vehicles were heading in his direction. Agent Cota knew that civilians would be in the area of S.R. 82, he knew that school was in session nearby, and he therefore

determined that the area needed to be immediately secured, as the vehicles were still traveling at a high rate of speed and posed a danger to unsuspecting pedestrians and students. Agent Cota advised other law enforcement personnel to block the roadway, secure the bridge, and deploy stop sticks. He quickly returned to his vehicle to join in the chase, but before doing so he told the defendant that he was under arrest, that he was not to leave, and that someone would be back to pick him up:

> A As the vehicles were approaching my location, I could hear a lot of tires screeching, vehicle acceleration and what concerned me the most is there was an individual, there was a bridge that kind of separates south river to State Route 82 and there was an individual in the bridge and I was yelling for him to get away from the bridge because there were some vehicles coming towards his location.
>
> ·* * * *
>
> Q When the vehicle hit the stop stick, did it stop?
> A No, it did not.
> Q You ran towards your vehicle. What did you do next?
> A I ran towards my vehicle and as I got to the trunk I yelled to Mr. Santillan that he was under arrest and he was not to leave I was going to send somebody back to pick him up.
> Q And what was Mr. Santillan's reaction?
> A He didn't say anything.
> Q And how far were you away from Mr. Santillan?

> A I would say no more than 5 feet (RT 7/1/08 at 82).[1]

Agent Cota did not handcuff the defendant because there was no agent available to watch him; similarly, he did not place the defendant in his own law enforcement vehicle because doing so would have placed the defendant in grave danger and would have contravened organizational operating policy.

Ultimately the agents succeeded in stopping all three vehicles, but only one alleged driver was apprehended. One of the abandoned trucks was a maroon Dodge. It was found to contain 592.4 kilograms of marijuana and a cell phone. The second abandoned vehicle, a Chevy Tahoe, contained 625.4 kilograms of marijuana and a cell phone. The third vehicle, a red Chevrolet pickup truck driven by defendant Gabriel Noriega–Llanez, contained 586 kilograms of marijuana and three cell phones. After the brief but dangerous pursuit ended, Agents Acevedo and Cota compared the recent phone numbers called and received by the cell phone from the abandoned maroon Dodge truck and defendant's cell phone. They found that the defendant had used his phone to communicate with someone in the maroon Dodge truck as it was passing through the area of S.R. 82 and Duquesne Road.[2] Another agent had been directed to return to Duquesne Road and S.R. 82 to pick up the defendant, but when the agent arrived, the defendant was gone. After various failed attempts to arrest the defendant at his residence, he was finally arrested there, pursuant to a warrant, on November 13, 2007.

---

1. As no official transcript has yet been prepared, the Court's citations to the transcript of the Motion to Suppress Hearing refer to the Court Reporter's original, unedited real time ("RT") version. Any finalized transcript may contain slightly different page and/or line numbers.

2. The agents did not search the address books or any text messages in the phones; they simultaneously compared the recent calls made and received by the phones.

## Defendant's Motion to Suppress

The defendant seeks to suppress evidence of the cell phone seized from him. He maintains that the cell phone was illegally seized and, in any event, the information stored on the phone was illegally retrieved in a warrantless search by federal agents. The defendant argues that no arrest occurred because the defendant was left alone by Agent Cota.

The government contends that an arrest occurred when Agent Cota commanded the defendant to remain at the corner of Duquesne Road and S.R. 82 and that the cell phone was lawfully seized and searched incident to the lawful arrest. The government also suggests that exigent circumstances warranted the seizure and search of the defendant's cell phone. Alternatively, the government argues that the inevitable discovery and independent source exceptions to the exclusionary rule permit the admission of the evidence, even assuming the search conducted by the agents was constitutionally infirm.

## The Seizure and Arrest of Santillan

 Under the Fourth Amendment, "a seizure occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen." *United States v. Chan–Jimenez*, 125 F.3d 1324, 1326 (9th Cir.1997). Liberty is restrained when, given the totality of circumstances, the conduct of the police would communicate "to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (internal quotation marks and citations omitted). If a "suspect is physically subdued or submits to the assertion of authority," a seizure has occurred. *United States v. Smith*, 217 F.3d 746, 750 (9th Cir.2000). In this case a seizure clearly occurred. The defendant was explicitly told by Agent Cota that he

was being detained, physical force was used to detain him, and he complied.

 The defendant argues that he was never arrested. "The standard for determining whether a person is under arrest is not simply whether a person believes that he is free to leave, *see United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), but rather whether a reasonable person would believe that he or she is being subjected to more than a temporary detention...." *United States v. Hernandez*, 322 F.3d 592, 596–97 (9th Cir.2003) (internal quotation marks and citations omitted). Distinguishing between a mere investigatory stop based on reasonable suspicion and an arrest based upon probable cause requires a fact-specific, totality of the circumstances analysis, and the "relevant inquiry is always one of reasonableness under the circumstances." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.1996) (internal quotation marks and citations omitted). In this case, given the totality of the admittedly unique circumstances, it must be concluded that the defendant was placed under arrest. Here, the defendant was clearly seized; the defendant was explicitly told he was being detained, was in fact physically restrained, and submitted to police authority. While the defendant was on the ground, Agent Cota was in the process of retrieving handcuffs to fully secure the defendant. At this point the exigency of the situation and the unpredictable and dangerous activity of the apparent drug smugglers demanded swift and decisive action by Agent Cota, the on-site commander. He immediately took measures to protect the safety of the public and apprehend the fleeing vehicles. He could not have left the defendant handcuffed or placed him in his own vehicle without exposing him

to grave danger and violating operating policy. Under the circumstances he did the only thing he could do; he clearly communicated to the defendant that he was under arrest, told him not to move, and told him someone would be back to pick him up. No reasonable person in the defendant's position would have felt that he was being subjected to anything less than an arrest. Agent Cota expressly told the defendant he was under arrest, signaling to the defendant that he was indeed being subjected to more then a mere temporary detention. The defendant's eventual disobedience and unpermitted flight from the scene does not constitute proof that he was not placed under arrest, but rather proves that he was seeking to evade an arrest already made, something he was able to do only through fortuitous circumstances.

■■■■ A warrantless arrest must be supported by probable cause. *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990). Probable cause exists if, "at the time the arrest is made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense'" *Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir.2001) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see also United States v. Carranza*, 289 F.3d 634, 640 (9th Cir.2002) ("Probable cause existed if under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.") (internal quotation marks and citations omitted). In drug investigations a court "may consider the experience and expertise of the officers involved," which experience and expertise "may lead a trained narcotics officer to perceive meaning from conduct which would other-

wise seem innocent to the untrained observer." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir.1999). In this case the agents had probable cause to arrest the defendant. Although he claimed to be jogging, the defendant never moved more than 100 yards in either direction, was constantly speaking on his cell phone, was exceedingly and peculiarly concerned with traffic approaching the S.R. 82 and Duquesne Road intersection, and refused to get off the cell phone at the very time communication with the apparent drug smuggling vehicles was most crucial. These experienced agents were reasonably justified in concluding that a fair probability existed that the defendant had committed a crime (and indeed was continuing to commit a crime even as Agent Cota sought to force the defendant to cease in his communications with the vehicles).

### The Seizure of the Phone

■■■■ A seizure of property occurs when "there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). A law enforcement officer may seize evidence without a warrant pursuant to the plain view exception if (1) the initial intrusion is lawful, and (2) the incriminatory nature of the evidence is immediately apparent to the officer. *See United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.2000). The Supreme Court has explained that the incriminating nature of an object is immediately apparent if the police have probable cause to believe the item is contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). There is authority for the proposition that cell phones and pagers in drug-trafficking investigations may come within the plain view exception to the warrant requirement as items akin to contraband, in that they are often tools of the drug-trafficking

trade. *See United States v. Martinez*, 938 F.2d 1078, 1083–84 (10th Cir.1991); *United States v. Morales–Ortiz*, 376 F.Supp.2d 1131, 1141 (D.N.M.2004). Evidence may also be seized if the seizure is justified by exigent circumstances, because the "Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

▮▮▮ In this case, whether the plain view or exigency exception is applied, the seizure of the cell phone was justified. As to plain view, officers had good reason to believe the phone was being used in the furtherance of a drug-trafficking crime and the defendant's initial recalcitrance only provided further justification under the circumstances, although none was needed. As to exigency, the danger posed to the community was real and immediate.[3] The agents had good reason to believe that the seizure of the phone might alleviate the danger to the community and themselves. The seizure of the cell phone was therefore justified.

### The Search of the Phone

▮▮▮ A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652. A warrantless search is *"per se* unreasonable … subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)(internal quotation marks and citations omitted).

▮▮▮ One exception to the search warrant requirement exists when a search is conducted incident to a lawful arrest. *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). The arrest and the search must be "roughly contemporaneous." *United States v. Tank*, 200 F.3d 627, 631–32 (9th Cir.2000); *see also United States v. McLaughlin*, 170 F.3d 889, 891 (9th Cir.1999) (police may search a motor vehicle, its passenger compartment, and any containers therein, even when the search commences some five minutes after an arrestee has been removed from the scene, so long as the search occurs "during a continuous series of events closely connected in time to the arrest"); *United States v. Nelson*, 102 F.3d 1344, 1346 (4th Cir.1996)("Although the 'incident to arrest' justification for warrantless searches does not permit an indefinite delay in a search … the justification does last for a reasonable time after the officers obtain exclusive control of the container that is to be searched"); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (warrantless search of property seized more than an hour before could not be justified as incident to lawful arrest, because search occurred too remote in time and place from arrest). Law enforcement officials may search the "arrestee's person and the area 'within his immediate control'-construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *United States v.*

---

**3.** For example, testimony elicited from Agent Cota revealed that the individual on the bridge actually had to hang off the structure to avoid the fleeing trucks, because he did not otherwise have enough time to get out of the way.

*Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). A lawful arrest does not destroy a person's interests in the privacy of his home, automobile, or belongings, but "it does-for at least a reasonable time and to a reasonable extent-take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence." *United States v. Edwards,* 415 U.S. 800, 808–809, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (quoting *United States v. DeLeo,* 422 F.2d 487, 493 (1st Cir.1970)).

There is authority for the proposition that warrantless searches of cell phones incident to a lawful arrest may be proper. *See United States v. Finley,* 477 F.3d 250, 258–260 (5th Cir.2007) (officer's warrantless search of defendant's cell phone records and text messages deemed proper as incident to lawful arrest, even though police had transported the defendant to his passenger's house, because search was "substantially contemporaneous with his arrest"); *United States v. Chan,* 830 F.Supp. 531, 534–36 (N.D.Cal.1993) (although defendant had a reasonable expectation of privacy in the contents of a pager's memory, analogous to the expectation of privacy in the contents of a container, the search of the pager, conducted incident to a lawful arrest, did not constitute a

Fourth Amendment violation, because the subsequent search was not so remote in time and place as to fall within the *Chadwick* exception; the general requirement for a warrant prior to the search of a container does not apply when the container is seized incident to a lawful arrest); *United States v. Ortiz,* 84 F.3d 977, 984 (7th Cir.1996) (law enforcement officers may immediately search or retrieve, incident to a lawful arrest, information from a pager, in order prevent its destruction as evidence).

▇▇▇▇ In this case the defendant was arrested and agents searched the incoming and outgoing calls on his cell phone mere minutes after the arrest and seizure of his phone, and as soon as practicable given the high speed chase that had just transpired.[4] The search of the phone was roughly contemporaneous with the arrest. Furthermore, the agents knew that other suspects were still at large, had heard transmissions indicating that weapons were being prepared by the smugglers and their cohorts, and had good reason to believe that the suspects had been in contact with the defendant. The agents thus had a valid concern that more incoming calls to the defendant's cell phone could destroy evidence that was then located on the cell phone's recent contacts lists.[5] Because

---

**4.**

Q If your initial contact with Santillan you were initially receiving information about him was at 4:00, when do you think this is happening? Is it two hours later?

A No, sir.

Q When is it happening?

A I would say I don't know, I wasn't keeping track of time. Just when the chase ended, I mean it was minutes. I know it wasn't hours. (RT 7/2/08 at 23).

**5.** The defendant's reliance on *United States v. Park,* 2007 WL 1521573 (N.D.Cal.2007), is misplaced. In *Park* the booking search of the cell phones was conducted approximately an

hour and a half after the arrests occurred, and thus the search was not roughly contemporaneous with the arrests. The search in *Park* also included access to the cell phones' address books. The government did not contend and the court concluded that the record did not show that the search of the phones was conducted to insure officer safety or to prevent the destruction of evidence. The testimony elicited from law enforcement personnel in *Park* showed that the search of the cell phones was purely investigatory and the court therefore held the search improper, because at that point in time officers could and should have sought a warrant. In this case, in stark contrast to *Park,* the agents conducted a roughly contemporaneous and very limited search of the defendant's cell phone, access-

this was a search clearly conducted as part of a "continuous series of events closely connected in time to the arrest," *see McLaughlin*, 170 F.3d at 891, it must be concluded that it was permissible as a search incident to arrest.[6]

 A warrantless search may also be justified by exigent circumstances. Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir.2004) (internal quotation marks and citations omitted). Exigent circumstances may exist even in the absence of hot pursuit, and "the gravity of the crime and likelihood that the suspect is armed may be considered when weighing the risk of danger." *Ortiz–Sandoval v. Clarke*, 323 F.3d 1165, 1171–72 (9th Cir.2003).

A warrantless search of a seized cell phone, which results in the retrieval of a record of incoming calls to that phone, may be justified by exigent circumstances. *See United States v. Parada*, 289 F.Supp.2d 1291, 1303–04 (D.Kan.2003) ("Because a cell phone has a limited memory to store numbers, the agent recorded the numbers in the event that subsequent incoming calls effected the deletion or overwriting of the earlier stored numbers. This can occur whether the phone is turned on or off, so it is irrelevant whether the defendant or the officers turned on the phone ... under these circumstances, the agent had the authority to immediately search or retrieve, as a matter of exigency, the cell phone's memory of stored numbers of incoming phone calls, in order to prevent the destruction of this evidence")[7]; *but see United States v. Morales–Ortiz*, 376 F.Supp 2d 1131, 1141–1142 (exigent circumstances did not justify retrieval of a cell phone's memory where authorities, unlike those in *Parada*, appeared to have retrieved phone numbers *and* names, suggesting that authorities did more than merely record the incoming call list, and actually accessed the phone book's memory; contents of cell phone, despite the unlawful search, still held admissible based on the doctrine of inevitable discovery).

---

ing only recent contacts from the defendant's cell phone and the corresponding cell phone from the abandoned truck. The agents did so due to the exigency of the situation and the need to insure officer safety and preserve evidence. The record in its totality and the unique fact pattern of this case support the arguments proffered by the government. Safety and evidence destruction were of paramount concern and the time between arrest and search was negligible, especially given what transpired in the interim, and so the search here satisfies at least two of the very rationales for the search incident to arrest exception.

6. It must be remembered that this search was conducted expeditiously after a high speed chase, when suspects and danger still lurked; this was no mere wide-ranging investigatory search conducted at leisure by the officers. For the crucial distinction between the two situations, *see generally Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) ("When officer safety or imminent evidence concealment or destruction is at issue, officers should not have to make fine judgments in the heat of the moment. But in the context of a general evidence-gathering search, the state interests that might justify any overbreadth are far less compelling.") (Scalia, J., concurring in the judgment).

7. The *Parada* Court further found that the retrieval of numbers from the memory of the cell phone did not violate the ECPA, 18 U.S.C. §§ 2510(4), 2511(1), as the stored numbers did not constitute a "communication" subject to the requirements of the Act.

■ In this case, the agents clearly had reason to believe that access to the defendant's cell phone was necessary to preserve safety and prevent the destruction of evidence. The search was limited in scope, as agents accessed only the recent contacts, or the incoming and outgoing calls. The search of the cell phone was therefore also permissible pursuant to the exigent circumstances exception.

## Inevitable Discovery and Independent Source

■ Even if the search of the defendant's cell phone does not qualify as a search incident to lawful arrest or as a search authorized due to exigent circumstances, the evidence would still be admissible under the inevitable discovery and independent source exceptions to the exclusionary rule. Illegally obtained evidence is admissible if the government proves by a preponderance of evidence that "the tainted evidence would inevitably have been discovered through lawful means." *United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1396 (9th Cir.1989). Closely related to the inevitable discovery exception is the independent source exception, which "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix. v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

■ In this case, the evidence originally obtained from the defendant's cell phone would inevitably have been discovered or would have been obtained from an independent source. The cell phone recovered from the abandoned maroon Dodge truck was lawfully seized by the agents. Through a search of that cell phone conducted pursuant to standard procedure in cases of this nature, the defendant's phone number and his use of the phone to communicate with smugglers in the drug transport vehicles at the time of the chase would inevitably have been discovered.[8] The phone number and its use were also discovered through an independent source- the lawfully seized cell phone in the abandoned maroon Dodge truck (still other independent sources would have been subpoenas of any of the other numerous phones lawfully seized (either through abandonment or incident to lawful arrest) after the chase ended).

## Conclusion

Accordingly,

8. The defendant argues that *United States v. Mejia*, 69 F.3d 309 (9th Cir.1995), prohibits the application of the inevitable discovery doctrine in this case. The court in *Mejia* held that the inevitable discovery doctrine does not apply "where the police had probable cause [to obtain a warrant] but simply did not attempt to get a warrant." In that case, however, the government contended that the failure to obtain a warrant was excusable because the defendant's statements in custody gave them probable cause to search his home and a warrant would have issued if one had been sought. The court noted that it was far from certain that a warrant would have issued and further noted that it was far from certain that the statements themselves would have been admissible. Finally, the court in *Mejia* warned that applying the inevitable discovery doctrine when police could have, but in fact did not, obtain a warrant, would obviate the warrant requirement altogether, as the existence of probable cause would leave officers without a reason to ever seek a warrant in the first place. This case is clearly distinguishable from *Mejia* simply as a factual matter. Here, there existed a plethora of lawfully seized evidence to which the defendant has no standing to object. Indeed, any one of the lawfully seized cell phones that were recovered from the smuggling vehicles would have led to the inevitable discovery of the very evidence the defendant seeks here to suppress.

**IT IS ORDERED** that the defendant's Motion to Suppress (Doc. No. 27) is **DENIED.**