KELLUM, Judge.
The appellant, Willie Gracie, was convicted of one count of first-degree robbery, a violation of § 13A-8-41, Ala.Code 1975. The circuit court sentenced Gracie as a habitual felony offender to 25 years’ imprisonment and ordered Gracie to pay $355 in restitution and all costs. This appeal followed.
The record on appeal indicates the following pertinent facts. On the night of November 17, 2008, Eugene Raby, the clerk at the Diamond Gasoline Service station in Demopolis, was robbed at gunpoint. Raby testified that the robber was a black male wearing a ski mask and a black coat that had a hood with brown fur that was pulled over his head. The robber drew a handgun and demanded money from the cash register. Raby said that he gave the robber approximately $200. After getting the money, the robber ran out of the store and in the direction of a car wash down the street from the Diamond Gasoline station. Raby telephoned 911 emergency assistance.
Shortly before the robbery, Gracie had entered the Diamond Gasoline station to purchase a telephone card. Raby testified that he recognized Gracie because Gracie’s mother owned the car wash adjacent to the Diamond Gasoline station and, according to Raby, Gracie came inside the station almost every day to purchase something. Raby reviewed photographs taken from the surveillance video-camera recording from that day and testified that the jacket worn by Gracie while he was in the store was very similar, if not identical, to the jacket worn by the robber.
Detective Sergeant Tim Soronen of the Demopolis Police Department traveled to the Diamond Gasoline station after receiving a 911 dispatch that the store had been robbed. Detective Soronen reviewed the surveillance tape and observed that the *808 robber was wearing a black coat with fur around the hood and that Gracie, when he entered the store, was wearing a jacket that was identical to the jacket worn by the robber.
Detective Soronen left the store and drove in the direction Raby said the robber had run and drove through the parking lot of the Red Carpet Inn motel. In the parking lot, Detective Soronen observed a white GMC truck in which someone was crouched down. Detective Soro-nen approached the vehicle and saw Gracie using a cellular telephone; Detective Soro-nen drew his firearm and demanded that Gracie get out of the vehicle. Once more officers arrived on the scene, Gracie was detained. In the backseat of the truck, Detective Soronen found the jacket that the robber in the surveillance video had appeared to be wearing. A ski mask was also recovered from the floorboard of the front passenger seat. Detective Soronen seized the coat and the ski mask, along with Gracie’s cellular telephone and approximately $180 in cash that was on his person.
Detective Soronen testified that Gracie told him that he was at the motel with someone; however, when Detective Soro-nen asked the residents of the three rooms adjacent to Gracie’s parking space whether they were with Gracie, all three responded that they were not. Detective Soronen also learned from the manager at the motel that Gracie was not a resident.
Gracie was transported to the Demopolis police station and subsequently placed under arrest. Gracie declined to make a statement after police advised him of his Miranda[1] rights. Detective Soronen then conducted a warrantless search of the call log and the text messages contained in Gracie’s cellular telephone in order to find evidence of accomplice participation.[2] Detective Soronen found the following text message in the cellular phone: “0 dats wats up am gone c can I make it home I just made so much money am scared all I c is da police am sitting n da truck watching tem but dats wats up ttyt lol.”[3] (C. 83, 84; R. 69-70.)
Gracie’s sole contention on appeal is that the circuit court erroneously denied his motion to suppress the text message seized pursuant to Detective Soronen’s search of his cellular telephone. Specifically, Gracie contends that he had a reasonable expectation of privacy in the text messages contained in his cellular telephone and that Detective Soronen’s war-rantless search violated Fourth Amendment principles.
“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1208 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App. 2004). In the instant case, the facts are uncontested; the only issue is the circuit court’s application of the law to those facts. Therefore, this Court affords the circuit court’s ruling no presumption of correctness.
It is well settled that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. State v. Mitchell, 722 So.2d 814, 820 (Ala. *809 Crim.App.1998); Chevere v. State, 607 So.2d 361, 368 (Ala.Crim.App.1992). These exceptions are: (1) plain view; (2) consent; (3) search incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Baird v. State, 849 So.2d 223, 229-230 (Ala.Crim.App.2002); Rokitski v. State, 715 So.2d 859, 861 (Ala.Crim.App.1997).
Although the evidence that Detective Soronen “searched” Gracie’s cellular telephone after Gracie was placed under arrest is undisputed, Gracie contends that the warrantless search of his telephone exceeded the scope of searches allowed under the search-incident-to-arrest exception of the Fourth Amendment warrant requirement. Whether a police officer may conduct a warrantless search of a suspect’s cellular telephone for incriminating evidence in the form of call logs or text messages pursuant to a lawful arrest is an issue of first impression in this State. Because our research reveals no Alabama caselaw addressing the specific issue before us today, we have looked to other jurisdictions for guidance.
In People v. Diaz, 51 Cal.4th 84, 119 Cal.Rptr.3d 105, 244 P.3d 501 (Cal.2011), the defendant was arrested following a “controlled buy” of Ecstasy, a controlled substance. In addition to six tablets of Ecstasy, the arresting officer found a cellular telephone on the defendant’s person that was subsequently seized and placed with the other evidence. After interviewing the defendant, the arresting officer looked at the text-message folder in the cellular telephone and discovered an incriminating message regarding the sale of Ecstasy. The defendant moved to suppress the text message, arguing that the warrantless search of his cellular telephone violated the Fourth Amendment; the trial court denied the motion.
On appeal, the California Supreme Court addressed the issue whether the Fourth Amendment permitted law-enforcement officers to conduct a warrant-less search of the text-message folder of a cellular telephone taken from Diaz following his arrest. The California court noted that resolution of this issue depended principally on three decisions of the United States Supreme Court: United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); and United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).
The Diaz court noted that in Robinson the United States Supreme Court upheld the warrantless search of a package found in the defendant’s coat following a lawful arrest for driving while his driver’s license was revoked. The Supreme Court held that the warrantless search of the package was valid under the Fourth Amendment as a search incident to a lawful custodial arrest. 51 Cal.4th at 91, 119 Cal.Rptr.3d 105, 244 P.3d at 504. Likewise, in Edwards, the Supreme Court upheld the war-rantless seizure and subsequent search of the clothing worn by a defendant at the time of his lawful arrest to determine if the defendant’s clothing contained paint chips matching those from the window of a building he was suspected of attempting to break into, again holding that the search was incident to a lawful arrest, even though a substantial period had elapsed between the arrest and the subsequent taking of the defendant’s property for use as evidence. 51 Cal.4th at 91, 119 Cal.Rptr.3d 105, 244 P.3d at 504.
The Diaz court then looked to Chadwick, determining that the United States Supreme Court had stepped back from its broader holding in Edwards. The court noted that in Chadwick the United States *810 Supreme Court rejected an argument that the warrantless search of a double-locked footlocker found in the trunk of a car was incident to a lawful arrest. The court noted that in Chadwick the Supreme Court reaffirmed “the principle that, because of ‘[t]he potential dangers lurking in all custodial arrests,’ police may conduct a warrantless search incident to arrest ‘whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence.’ ” 51 Cal.4th at 92,119 Cal.Rptr.3d 105, 244 P.3d at 505 (quoting Chadwick, 433 U.S. at 14). Nevertheless, the Diaz court explained, the Supreme Court held in Chadwick that “ ‘warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the “search is remote in time or place from the arrest,” [citation], or no exigency exists.’ ” 51 Cal.4th at 92, 119 Cal.Rptr.3d 105, 244 P.3d at 505.
Explaining why the Supreme Court’s decision in Chadwick did not conflict with its decisions in Robinson and Edwards, the Diaz court noted the warrantless searches in Robinson and Edwards involved searches “ ‘of the person’ rather than searches ‘of possessions within an arres-tee’s immediate control.’” 51 Cal.4th at 92, 119 Cal.Rptr.3d 105, 244 P.3d at 505 (quoting Chadwick, 433 U.S. at 16 n. 10). “The former searches, the court explained [in Chadwick ], are ‘justified by’ the ‘reduced expectations of privacy caused by the arrest’; the latter are not. (Ibid.) Thus, the defendants’ ‘privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest.’ (Ibid.).” 51 Cal.4th at 92, 119 Cal.Rptr.3d 105, 244 P.3d at 505.
After thoroughly examining the holdings in Robinson, Edwards, and Chadwick, the Diaz court then focused on the issue under consideration:
“Under these decisions, the key question in this case is whether defendant’s cell phone was ‘personal property ... immediately associated with [his] person’ (Chadwick, supra, 433 U.S. at p. 15, 97 S.Ct. 2476) like the cigarette package in Robinson and the clothes in Edwards. If it was, then the delayed warrantless search was a valid search incident to defendant’s lawful custodial arrest. If it was not, then the search, because it was ‘ “remote in time [and] place from the arrest,” ’ ‘cannot be justified as incident to that arrest’ unless an ‘exigency existed].’ (Chadwick, supra, at p. 15, 97 S.Ct. 2476.)
“We hold that the cell phone was ‘immediately associated with [defendant’s] person’ (Chadwick, supra, 433 U.S. at p. 15, 97 S.Ct. 2476), and that the warrant-less search of the cell phone therefore was valid. As the People explain, the cell phone ‘was an item [of personal property] on [defendant’s] person at the time of his arrest and during the administrative processing at the police station.’ In this regard, it was like the clothing taken from the defendant in Edwards and the cigarette package taken from the defendant’s coat pocket in Robinson, and it was unlike the footlocker in Chadwick, which was separate from the defendants’ persons and was merely within the ‘area’ of their ‘ “immediate control.” ’ (Chadwick, supra, 433 U.S. at p. 15, 97 S.Ct. 2476.)”
People v. Diaz, 51 Cal.4th at 93, 119 Cal.Rptr.3d 105, 244 P.3d at 506 (footnote omitted).
In addition to California, other jurisdictions have also held that a warrantless search of a defendant’s cellular telephone following the defendant’s arrest did not violate Fourth Amendment principles. See United States v. Murphy, 552 F.3d 405, 411-12 (4th Cir.2009); United States *811 v. Finley, 477 F.3d 250, 259-60 (5th Cir.2007); United States v. Santillan, 571 F.Supp.2d 1093, 1102 (D.Ariz.2008); United States v. Deans, 549 F.Supp.2d 1085, 1093-94 (D.Minn.2008); Fawdry v. State, 70 So.3d 626, 630 (Fla.Dist.Ct.App.2011); Smallwood v. State, 61 So.3d 448 (Fla.Dist.Ct.App.2011); Hawkins v. State, 307 Ga.App. 253, 704 S.E.2d 886, 892 (2010) (all holding that the warrantless search of the contents of a cellular telephone was a valid search incident to arrest).
Gracie urges this Court to reject the holdings of the jurisdictions cited above and adopt instead the holding of the Ohio Supreme Court in State v. Smith, 124 Ohio St.3d 163, 920 N.E.2d 949 (2009). In Smith, the Ohio Supreme Court held that “because a person has a high expectation of privacy in a cell phone’s contents,” police, after seizing a cell phone from an arrestee’s person, “must ... obtain a warrant before intruding into the phone’s contents.” 920 N.E.2d at 955. In so holding, the Ohio Supreme Court rejected the reasoning of a line of federal cases finding a cellular telephone is a “container” subject to search upon arrest.
“The state argues that we should ... affirm the court of appeals because the trial court was correct in its conclusion that a cell phone is akin to a closed container and is thus subject to search upon a lawful arrest. We do not agree with this comparison. Objects falling under the banner of ‘closed container’ have traditionally been physical objects capable of holding other physical objects. Indeed, the United States Supreme Court has stated that in this situation, ‘container’ means ‘any object capable of holding another object.’ New York v. Belton (1981), 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768, n. 4. One such example is a cigarette package containing drugs found in a person’s pocket, as in United States v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427.
“We acknowledge that some federal courts have likened electronic devices to closed containers. See, e.g., United States v. Chan (N.D.Cal.1993), 830 F.Supp. 531, 534 (finding that a pager is analogous to a closed container), United States v. Ortiz (C.A.71996), 84 F.3d 977, 984 (following Chan in holding that a pager is a closed container), United States v. David (D.Nev.1991), 756 F.Supp. 1385, 1390 (finding a computer memo book ‘indistinguishable from any other closed container’). Each of these cases, however, fails to consider the Supreme Court’s definition of ‘container’ in Belton, which implies that the container must actually have a physical object within it. Additionally, the pagers and computer memo books of the early and mid 1990s bear little resemblance to the cell phones of today. Even the more basic models of modern cell phones are capable of storing a wealth of digitized information wholly unlike any physical object found within a closed container. We thus hold that a cell phone is not a closed container for purposes of a Fourth Amendment analysis.”
State v. Smith, 124 Ohio St.3d at 167-68, 920 N.E.2d at 954.
Our research reveals no other jurisdiction that holds, as Ohio does, that a cellular telephone may not be searched incident to a lawful arrest without first obtaining a warrant on the basis that the cellular telephone is not a closed container as defined in Belton. Indeed, other jurisdictions have found the holding in Smith unpersuasive. In Fawdry v. State, supra, the Florida District Court of Appeal rejected the holding in Smith, stating:
“We are unpersuaded by Smith. Although it may be true that a digital file itself is ‘wholly unlike any physical object found within a closed container,’ the *812 information found within it is likely no different than information found within a printed physical copy of a digital file. Indeed, before the innovations made available in current cell phone technology, the information contained within digital files would have been contained in tangible copies and carried in closed containers. Digital files and programs on cell phones have merely served as replacements for personal effects like address books, calendar books, photo albums, and file folders previously carried in a tangible form. Viewed in this light, the cell phone merely acts as a ease (i.e. closed container) containing these personal effects. When in tangible form, the aforementioned personal effects could clearly, be searched incident to arrest if found in a case carried on the suspect’s person or in a vehicle which the suspect occupied. See Savoie [v. State], 422 So.2d [308, 313-14 (Fla.1982) ]; see also Robinson, 414 U.S. at 235-36. Accordingly, a search of a digital version of these personal effects would be similarly permissible. After all, it is the information itself in which a person’s privacy interests lie. See Finley, 477 F.3d at 259 (explaining that although the defendant’s employer owned the telephone, the defendant still ‘had a reasonable expectation of privacy in the call records and text messages on the cell phone’). Accordingly, a distinction based upon the manner in which that information is stored is unwarranted.”
Fawdry, 70 So.3d at 630. See also Smallwood v. State, 61 So.3d at 458-59 (recognizing that the holding in Smith that a cellular telephone may never be searched under the search-incident-to-arrest warrant requirement appears to be in contravention of existing United States Supreme Court caselaw); People v. Diaz, 51 Cal.4th at 101, 119 Cal.Rptr.3d 105, 244 P.3d at 511 n. 17 (noting the Ohio court’s focus on the extent of the arrestee’s expectation of privacy is inconsistent with the decisions of the United States Supreme Court).
We agree with the majority of jurisdictions surveyed that a warrantless search of a defendant’s cellular telephone following his arrest does not violate Fourth Amendment principles; we are not persuaded by the rationale in Smith that a cellular telephone may not be searched incident to a lawful arrest without first obtaining a warrant because the cellular telephone is not a container. In the instant case, the record indicates that Detective Soronen saw Gracie using a cellular telephone after the robbery. After placing Gracie under arrest, Detective Soronen searched the call log and text messages contained in Gracie’s cellular telephone to determine if Gracie had an accomplice. The cellular telephone was immediately associated with Gracie’s person, and pursuant to the decision of the United States Supreme Court in Robinson, Detective So-ronen was permitted to inspect the cellular telephone. 414 U.S. at 236. Accordingly, the warrantless search of Gracie’s cellular telephone following Gracie’s arrest did not violate Fourth Amendment principles, and the circuit court did not err in denying Gracie’s motion to suppress the text message seized pursuant to Detective Soro-nen’s search of Gracie’s cellular telephone.
Furthermore, any error in the search of Gracie’s cellular telephone, the seizure of the text message, and the subsequent admission of that text message into evidence at trial was harmless. The harmless-error rule provides, in pertinent part:
“No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after examination of the entire cause, it should appear that the error *813 complained of has probably injuriously affected substantial rights of the parties.”
Rule 45, Ala. R.App. P.
In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before a federal constitutional error can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. In Ex parte Crymes, 630 So.2d 125 (Ala.1993), the Alabama Supreme Court explained:
“In determining whether the admission of improper testimony is reversible error, this Court has stated that the reviewing court must determine whether the ‘improper admission of the evidence ... might have adversely affected the defendant’s right to a fair trial,’ and before the reviewing court can affirm a judgment based upon the ‘harmless error’ rule, that court must find conclusively that the trial court’s error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.”
630 So.2d at 126. See also Ex parte Greathouse, 624 So.2d 208, 210 (Ala.1993) (holding that the proper harmless-error inquiry-asks — absent the improperly introduced evidence, “is it clear beyond reasonable doubt that the jury would have returned a verdict of guilty?”).
The jury heard testimony that Gracie entered the gas station to purchase a telephone calling card shortly before the armed robbery occurred. Raby, who was working at the store when Gracie made his purchase and later when the robber entered the store, testified that the jackets worn by Gracie and the robber were very similar, if not identical. Raby also said that the robber wore a ski mask and that he took approximately $200. Detective So-ronen testified that he responded to the dispatch of the robbery and located Gracie crouching down in white GMC truck not far from the scene of the robbery. Detective Soronen found in the backseat a jacket that appeared to be the jacket the robber had been wearing when he entered the gas station. A ski mask was also found in the floorboard of the front passenger seat. Approximately $180 was found on Gracie’s person. Finally, the jury saw the surveillance video that showed both Gracie visiting the store earlier and the armed robbery that occurred shortly thereafter.
Given the evidence presented at trial, even if we were to conclude that Detective Soronen violated Gracie’s Fourth Amendment rights by conducting a warrantless search of his cellular telephone and, thus, that the admission of the text message seized pursuant to that illegal search was inadmissible at trial, we would conclude that the circuit court’s denial of Gracie’s motion to suppress admission of the text message did not affect the outcome of the trial or otherwise prejudice a substantial right of Gracie. See Crymes, 630 So.2d at 126. Moreover, based on our review of the record, it is “clear beyond a reasonable doubt that the jury would have returned a verdict of guilty” regardless of the trial court’s admission of the text message into evidence at trial. Greathouse, 624 So.2d at 210. See also Chapman, supra. Therefore, any error on the part of the trial court would have been harmless, and no basis for reversal exists as to this claim.
Based on the foregoing, the judgment of the circuit court is due to be affirmed.
AFFIRMED.
WELCH, P.J., and WINDOM, BURKE, and JOINER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Gracie’s cellular telephone was not password protected.

."TTYT” and "LOL” are colloquial shorthand abbreviations commonly used in text messaging. The former is shorthand for, "talk to you tomorrow.” The latter is shorthand for, "laugh out loud" — an indication to the reader that the sender is laughing.