## A07A0173. CUNNINGHAM v. THE STATE.
### (644 SE2d 878)

ADAMS, Judge.

Jennifer Cunningham was convicted by a jury of three counts of first degree vehicular homicide, three counts of second degree vehicular homicide, driving under the influence, failure to maintain lane and no proof of insurance. The trial court merged the second degree vehicular homicide and driving under the influence counts with the first degree vehicular homicide counts, and sentenced Cunningham to 30 years confinement and 17 years on probation. She appeals following the denial of her motion and amended motions for new trial,

contending in her sole enumeration of error on appeal that the trial court erred by denying her motion to suppress.

The following facts are pertinent to the resolution of this appeal: The collision giving rise to the charges against Cunningham occurred on Georgia Highway 11. Two of the three passengers in her car, including her four-year-old son, were pronounced dead at the scene, and the driver of the other vehicle died en route to the hospital. Cunningham was airlifted to an Atlanta area hospital from the crash site.

Georgia State Trooper Charles Anthony Henry investigated the crash. Because of her injuries, Henry did not have any contact with Cunningham at the scene. Henry quickly ascertained that there were two fatalities from Cunningham's vehicle and that the driver of the other vehicle was in "grim" condition. An eyewitness to the accident told him that Cunningham's vehicle had swerved suddenly and without warning into the southbound lane of Georgia Highway 11, striking the other vehicle. Based on this and observations of the accident scene, Trooper Henry determined that Cunningham was clearly at fault and the other driver had done nothing to cause the accident. Henry testified the information he had at that point indicated to him that Cunningham was impaired, so he made a request that another officer go to the hospital where Cunningham had been taken and obtain blood and urine samples so a chemical analysis could be performed to determine if she was under the influence of drugs or alcohol.

Trooper Henry then continued his investigation. Several witnesses at the scene knew the identity of the driver of the other vehicle, but no one could identify Cunningham or her passengers. Cunningham's purse was located in the wreckage and given to Henry. He found Cunningham's driver's license inside the purse, and also noticed a portion "or handful" of steel wool inside the purse. Based on his training and experience, he knew steel wool was commonly used as a filter in smoking crack cocaine. In addition to the steel wool, Henry also found prescription bottles containing hydrocodone (Loratab), methadone and Buspirone with labels bearing Cunningham's name. At trial, evidence was admitted that Cunningham's blood tested positive for diazepam (Valium), nordiazepam (a metabolite of Valium), cocaine, benzylecogonine (a metabolite of cocaine) and methadone. Cocaine, cocaine metabolites and methadone were found in Cunningham's urine.

Citing *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003), Cunningham contends that the trial court erred by denying her motion to suppress the results of the chemical testing performed on her blood and urine. In *Cooper*, our Supreme Court declared a portion of OCGA § 40-5-55 (a) unconstitutional, holding that to the extent

that section "requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities *regardless of any determination of probable cause*, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions." (Emphasis supplied.) Id. at 291 (V).

However, in *Hough v. State*, 279 Ga. 711 (620 SE2d 380) (2005) our Supreme Court made plain what was implicit in *Cooper*.

> *Cooper* makes it clear that OCGA § 40-5-55 (a) is unconstitutional to the extent that it could be interpreted to require an individual to submit to chemical testing *solely* because that individual was involved in a traffic accident resulting in serious injuries or fatalities. On the other hand, where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing search is both warranted and constitutional.

(Emphasis in original.) Id. at 713 (1) (a).

Cunningham argues that Trooper Henry lacked probable cause to believe that she was driving under the influence at that time he ordered that her blood and urine be tested. She points out that Henry did not have any contact with her at the scene, and that at the time he ordered the testing the only facts known to him were that there had been a serious accident with fatalities and that witnesses had seen the vehicle she was driving suddenly swerve into the oncoming lane of traffic and strike another vehicle. Cunningham argues that these facts, standing alone, did not establish probable cause to believe that she was driving under the influence since other factors could account for her failing to maintain her lane.

The State argues that pretermitting whether Trooper Henry had probable cause at the time he requested the testing, probable cause existed as soon as he found the steel wool and drugs in her purse. Thus, the State argues the trial court correctly denied the motion to suppress under the "inevitable discovery rule."

Under the inevitable discovery doctrine, if the State shows by a preponderance of the evidence that illegally obtained evidence would have been discovered inevitably by lawful means, the evidence is admissible. *Taylor v. State*, 274 Ga. 269, 274 (3) (553 SE2d 598) (2001). *Wilkes v. State*, 269 Ga. App. 532, 535 (2) (b) (604 SE2d 601) (2004); *State v. Rocco*, 255 Ga. App. 565, 566 (566 SE2d 365) (2002). However,

there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct.

(Punctuation omitted.) *Taylor v. State*, 274 Ga. at 274-275 (3).

In this case, Trooper Henry was lawfully investigating the crash at the time he requested that the chemical testing be performed. As part of that investigation, Henry was attempting to ascertain the identity of the driver of one of the vehicles and was also looking for proof that the vehicle was properly insured. The prescription drugs and steel wool in Cunningham's purse were found in the course of that investigation, and Cunningham does not contend that the officer's entry into her purse was unlawful or unauthorized. She also does not dispute that Henry had the necessary probable cause to request chemical testing to determine the presence of alcohol or drugs in her blood or urine once he found the items in her purse. And in fact, Trooper Henry testified that at the time he discovered the items in Cunningham's purse, the blood and urine samples had not yet been obtained. Under the particular circumstances here, we agree that it was inevitable that Trooper Henry would look in Cunningham's purse during the course of his investigation. The items he found there, coupled with the other information he had concerning the nature and cause of the crash, provided sufficient probable cause for Henry to believe that Cunningham was driving under the influence. Thus, the testing was lawful under OCGA § 40-5-55 (a) and the trial court did not err by denying Cunningham's motion to suppress.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 30, 2007.

*Steven B. Mizerak*, for appellant.
*W. Kendall Wynne, Jr., District Attorney*, for appellee.