## S09G2058. BROGDON v. THE STATE.
### (697 SE2d 211)

BENHAM, Justice.

We issued a writ of certiorari to the Court of Appeals to determine the extent, if any, to which the statutory exemption of "private papers" from the purview of a search warrant applies to a search warrant issued for medical records maintained by a hospital. OCGA § 17-5-21 (a) (5). See *King v. State*, 276 Ga. 126 (577 SE2d 764) (2003). See also *Sears v. State*, 262 Ga. 805 (426 SE2d 553) (1993). The statute provides that a judicial officer may issue a search warrant, upon a showing of probable cause and the inclusion of particular descriptions of the place to be searched and the items to be seized, for the seizure of "(5) Any item, substance, object, thing, or matter, *other than the private papers of any person*, which is tangible evidence of the commission of the crime for which probable cause is sought." (Emphasis supplied.)[1] The Court of Appeals affirmed the trial court's denial of appellant's motion to suppress the medical records that had been obtained by means of a search warrant, finding Brogdon's reliance on the statutory "private papers" exemption to be unavailing and determining that our decision in *King v. State*, supra, 276 Ga. 126, was controlling. *Brogdon v. State*, 299 Ga. App. 547, 550-551 (683 SE2d 99) (2009).

Appellant was involved in a vehicular collision in which the vehicle he was driving ran into the rear of the car in front of him. The responding police officer arrived at the scene in time to smell alcohol in the ambulance where appellant was being treated, to notice appellant's belligerent behavior, and to find evidence of alcohol consumption in the cab and bed of appellant's truck. While at the scene of the collision, the officer did not ask appellant to submit to a blood-alcohol test, and the officer was unable to continue his investigation at the hospital to which appellant was taken because appellant was receiving medical treatment. Five months later, the Gwinnett solicitor-general's office obtained and served upon the hospital a search warrant for Brogdon's medical records for the date

---

[1] The statute also authorizes the issuance of a search warrant for items, "including the private papers of any person, which are designed, intended for use, or which have been used in the commission of the offense in connection with which the warrant is issued; . . . [for s]tolen or embezzled property; [or for a]ny item, substance, object, thing, or matter, the possession of which is unlawful. . . ." OCGA § 17-5-21 (a) (1), (3), (4).

on which Brogdon had been treated at the hospital following the vehicular collision. The hospital provided the records, and the trial court denied Brogdon's motion to suppress the medical records as "private papers" under OCGA § 17-5-21 (a) (5). In a bench trial, the trial court considered the content of the medical records and found Brogdon guilty of driving under the influence.

1. While both *King v. State*, supra, 276 Ga. 126, and the case at bar involve efforts to suppress a defendant's medical records obtained from a hospital pursuant to a search warrant, our holding in *King* does not control the outcome of this case because *King* did not resolve the issue presented by appellant Brogdon. In *King*, we held that the defendant's state constitutional right to privacy in his personal medical records was not violated when the State obtained the medical records through a search warrant that was issued without a hearing or notice to the defendant because the constitutional and statutory provisions for obtaining a search warrant contained procedural safeguards that limit the State's ability to obtain a defendant's private records. Id. at 128.

In contrast to the defendant in *King*, appellant Brogdon does not invoke his constitutional right to privacy in his effort to suppress his medical records obtained from the hospital that treated him the night of his vehicular collision. Rather, he relies on the exemption found in OCGA § 17-5-21 (a) (5) of "private papers" from the coverage of a search warrant. The statute "sets forth the scope of a search pursuant to a warrant." *Ledesma v. State*, 251 Ga. 885 (7) (311 SE2d 427) (1984). We were not called upon in *King* to address the question presented in the case at bar: whether medical records in the custody and control of a hospital are "private papers" that, as provided in OCGA § 17-5-21 (a) (5), are not within the scope of a search warrant. Thus, our decision in *King* does not control the outcome of this case.

2. OCGA § 17-5-21 (a) (5) authorizes a judicial officer to issue a search warrant for the seizure of tangible evidence of the offense for which probable cause has been shown, excepting private papers; subsection (a) (1) authorizes the issuance of a search warrant for instrumentalities, including private papers, of the offense in connection with which the warrant was issued;[2] and subsection (b) authorizes the seizure during a lawful search of tangible evidence of the commission of a crime, excepting private papers, and the seizure of any item, including private papers, that is an instrumentality of a crime regardless of whether it is named in the search warrant. *Sears*

---

[2] There is no suggestion in the case at bar that the medical records that were the subject of the search warrant are instrumentalities of the crime.

*v. State*, supra, 262 Ga. at 806-807; *Ledesma v. State*, supra, 251 Ga. at 890; *Ibekilo v. State*, 277 Ga. App. 384 (2) (626 SE2d 592) (2006); *Nichols v. State*, 210 Ga. App. 134 (3) (b) (435 SE2d 502) (1993).[3] Thus, the statute authorizes seizure pursuant to a warrant or during the execution of a lawful search, of private papers that are instrumentalities of the crime in connection with which the search warrant was issued, but the statute does not permit the seizure pursuant to a warrant or during the execution of a lawful search of private papers that are merely tangible evidence of the commission of the crime in connection with which the search warrant was issued. *Tuzman v. State*, 145 Ga. App. 761 (2) (B) (244 SE2d 882) (1978) ("If private papers constitute merely 'tangible evidence' of the commission of a crime, they are not seizable. [Cit.] But where the papers are the *instrumentalities* of the crime, they are properly seizable. . . .") (citations omitted). See *Lowe v. State*, 203 Ga. App. 277, 280 (416 SE2d 750) (1992) ("The creation of a 'private papers' exception by the Legislature pursuant to . . . OCGA § 17-5-21 was clearly intended to promote a privacy interest in the contents of documents which were not actual instrumentalities of a crime."). The question critical to resolution of this appeal is whether a hospital's records of the medical treatment provided a patient are "private papers" exempted from the coverage of a search warrant.

In *Sears v. State*, supra, 262 Ga. at 807, citing a dearth of case law concerning the exemption from seizure by warrant or other lawful search of private papers that were merely tangible evidence of a crime, this Court summarily concluded that "the most reasonable interpretation of OCGA § 17-5-21 . . . is to restrict its reach to papers covered by privilege" and we cited as examples thereof the attorney-client privilege and the doctor-patient privilege. The case at bar has caused us to question the rationale of that decision and the statutory construction that resulted. First, the "cardinal rule" of statutory construction is to discern the intent of the General Assembly in enacting the statute, "keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a); *In the Interest of D. H.*, 285 Ga. 51 (3) (673 SE2d 191) (2009). We conducted no such analysis in *Sears*. Second, we buttressed our adoption of "the most reasonable interpretation" by noting it was consistent with this Court's decision in *Mooney v. State*, 243 Ga. 373 (254 SE2d 337) (1979), a case that was not likely to shed light on the legislative intent of the 1966 General Assembly since it was decided thirteen

---

[3] OCGA § 17-5-21 also authorizes the issuance of a search warrant for the seizure of any person who has been kidnapped, any human fetus or human corpse (OCGA § 17-5-21 (a) (2)); for the seizure of stolen or embezzled property (OCGA § 17-5-21 (a) (3)), or any item, the possession of which is unlawful. OCGA § 17-5-21 (a) (4).

years *after* the enactment of the statute, and which addressed the constitutionality of an inventory search of luggage delivered to the defendant while in jail rather than the statutory protection afforded "private papers" by OCGA § 17-5-21 (a) (5). Finally, our statutory construction in *Sears* was confusing in its reference to an evidentiary privilege[4] for doctor-patient communications in Georgia since that relationship is not one recognized by the legislature as privileged. *Elliott v. Ga. Power Co.*, 58 Ga. App. 151, 154 (197 SE 914) (1938). In light of the deficiencies in our approach in *Sears*, we disavow its result and now undertake the task of discerning the intention of the 1966 General Assembly that enacted Ga. Code Ann. § 27-303, the predecessor to OCGA § 17-5-21.

At the time Ga. Code Ann. § 27-303 (now OCGA § 17-5-21) was enacted in 1966 (Ga. L. 1966, p. 567, § 3), the United States Supreme Court had ruled that a person's private papers were immune from seizure under both the Fourth and Fifth Amendments because they were private property and were testimonial in nature. This rationale was based on the determination that the Fourth Amendment prohibited the seizure of a person's documents or property unless the government could claim a proprietary interest in the property superior to that of the person from whom the property was obtained. *Boyd v. United States*, 116 U. S. 616, 623-624 (6 SC 524, 29 LE 746) (1886). In *Gouled v. United States*, 255 U. S. 298, 309-311 (41 SC 261, 65 LE 647) (1921), the Court continued its "superior property interest" rationale, pointing out that a search warrant could not be used as a means of gaining access to a person's home, office, and papers solely to seize evidence to prove a person had committed a crime, but could only be used to seize property that was "an instrumentality or fruit of crime, or contraband[,]" that is, when the government had a valid superior interest in the property to be seized or a superior right to its possession. The Fifth Amendment was brought into play because when the government's sole interest in a person's papers was to use them as evidence against the person, "to permit them to be used in evidence would be, in effect, . . . to compel the defendant to be a witness against himself." Id. See also Craig Bradley, "Constitutional Protection for Private Papers," 16 Harv. C.R.-C.L. L. Rev. 461, 465 (1981). However, when an individual's private papers were used in a criminal operation, they were subject to seizure and use as evidence against the individual. See, e.g., *Abel v. United States*, 362 U. S. 217 (80 SC 683, 4 LE2d 668) (1960).

The Supreme Court's holdings became matters of interest to

---

[4] "An evidentiary privilege is the right to refuse to testify to certain matters. It trumps the trial court's power to compel testimony." Paul Milich, Georgia's Rules of Evidence, § 20.1, p. 485 (2nd ed. 2002).

state courts and legislatures because the holdings involved both the Fourth and Fifth Amendments, and the exclusionary rule for violation of the Fourth Amendment was made applicable to the states in 1961 in *Mapp v. Ohio*, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081) (1961).[5] The Supreme Court's distinction based on property rights between "mere evidence" that could not be the subject of a search warrant and instrumentalities, fruits, or contraband that could be the subject of a search warrant was the subject of much criticism by courts and commentators. *Warden v. Hayden*, 387 U. S. 294, 300, n. 6, 7 (87 SC 1642, 18 LE2d 782) (1967). The Supreme Court of New Jersey noted that the United States Supreme Court had never held *Boyd* to be applicable to tangibles other than private papers and upheld New Jersey's statute authorizing issuance of a search warrant for "any property: . . . [c]onstituting evidence of or tending to show any such violation [of the penal laws of any state]." *State v. Bisaccia*, 45 N. J. 504, 507, 515 (213 A2d 185) (1965). New York's statute, amended in 1962 to authorize issuance of a search warrant for "property constituting evidence of a crime" was found to be constitutional in *People v. Martin*, 49 Misc.2d 268, 269 (267 NYS2d 404) (1966).[6] See also *People v. Thayer*, 63 Cal.2d 635 (408 P2d 108, 47 Cal. Rptr. 780) (1966), where the Supreme Court of California ruled that "the mere evidence rule is rejected by statute [in California]" and rejected the assertion that *Gouled* made the "mere evidence" rule a constitutional standard; *State v. Raymond*, 258 Iowa 1339, 1351 (142 NW2d 444) (1966) (items may be seized for their inculpatory value alone); Charles T. Newton, Jr., "The Mere Evidence Rule: Doctrine or Dogma?" 45 Tex. L. Rev. 526 (1967).[7]

---

[5] In *Warden v. Hayden*, 387 U. S. 294, 309 (87 SC 1642, 18 LE2d 782) (1967), the U. S. Supreme Court observed that *Mapp v. Ohio* "only recently made the 'mere evidence' rule a problem in the state courts."

[6] The *Martin* court noted that the New York statute was "a valid statutory enactment, adopted and existent in a number of States." Id.

[7] In May 1967, less than a year after the enactment of the Georgia statute, the United States Supreme Court implicitly agreed with the legislatures, courts, and commentators who had criticized the Court's use of the mere evidence rule when it determined that "[n]othing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband" and deemed the distinction "wholly irrational." *Warden v. Hayden*, supra, 387 U. S. at 301-302. The Court noted that "[t]he premise that property interests control the right of the Government to search and seize has been discredited" and that it had previously "recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property. . . ." Id. at 304. The Court observed that its rejection of the "mere evidence" limitation could enlarge the area of permissible searches, but lawful intrusions would be made only "after fulfilling the probable cause and particularity requirements of the Fourth Amendment and after the intervention of 'a neutral and detached magistrate. . . . ' [Cit.]" Id. at 309-310.

While *Hayden* did away with the Fourth Amendment bulwark for the special treatment afforded an individual's "private papers," it left open the possibility that "private papers" might have protection under the Fifth Amendment when it distinguished the *Hayden* facts

The Georgia statute, enacted in 1966, authorizes the issuance of search warrants along the lines set out by the United States Supreme Court rulings: it authorizes issuance of a search warrant for instrumentalities of a crime, including private papers (OCGA § 17-5-21 (a) (1)); for stolen or embezzled property (OCGA § 17-5-21 (a) (3)); and for contraband (OCGA § 17-5-21 (a) (4)). In enacting OCGA § 17-5-21 (a) (5), Georgia joined the chorus of states enacting a statutory rebuff to the mere evidence rule by authorizing the issuance of a search warrant for any item "which is tangible evidence of the crime for which probable cause is shown." However, the General Assembly exempted from a search warrant's coverage "private papers" that constituted tangible evidence of the crime for which probable cause had been shown. In 1966, the use of a person's private papers to convict the person of a crime was seen as the equivalent of "forcible and compulsory extortion of a [person]'s own testimony" and was forbidden by the Fifth Amendment's right against compulsory self-incrimination. *Boyd v. United States*, supra, 116 U. S. at 630. The constitutional privilege against self-incrimination was "designed to prevent the use of legal process to force . . . the accused individual . . . to produce and authenticate any personal documents or effects that might incriminate him." *United States v. White*, 322 U. S. 694, 698 (64 SC 1248, 88 LE 1542) (1944). It protected "papers and effects . . . [that were] the personal property of the person claiming the privilege, or at least in his possession in a purely personal capacity." Id. Thus, the "private papers" that were subject to OCGA § 17-5-21 (a) (5)'s exemption from a search warrant's coverage were those papers that belonged to the accused or were, at the least, in his possession. Prior to this Court's decision in *Sears*, the Georgia appellate courts had issued several opinions concerning "private papers." See, e.g., *Tuz-*

---

from the seizure of private papers. The Court observed that the items of clothing involved were not " 'testimonial' or 'communicative' in nature and their introduction therefore did not compel [Hayden] to become a witness against himself in violation of the Fifth Amendment. [Cit.] This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." Id. at 302-303. In subsequent decisions, the Court continued to put distance between itself and the broad language used in *Boyd* concerning an individual's private documents. See *Couch v. United States*, 409 U. S. 322, 329 (93 SC 611, 34 LE2d 548) (1973) (IRS summons served on taxpayer's accountant requiring production of taxpayer's own records in the accountant's possession did not violate the taxpayer's Fifth Amendment rights as the documents were obtainable without personal compulsion on the accused); *Andresen v. Maryland*, 427 U. S. 463 (96 SC 2737, 49 LE2d 627) (1976) (where business records prepared by the defendant and seized from his office pursuant to a warrant were used against him at trial, there was no compulsory self-incrimination because the defendant was not compelled to prepare, produce, or authenticate the documents); *Fisher v. United States*, 425 U. S. 391, 401 (96 SC 1569, 48 LE2d 39) (1976) (the Court stated it "adhere[d] to the view that the Fifth Amendment protects against 'compelled self-incrimination, not (the disclosure of) private information.' [Cit.])" "Thus, the traditional constitutional protections for private papers were swept away." Bradley, supra, 16 Harv. C.R.-C.L. L. Rev. at 473.

*man v. State*, supra, 145 Ga. App. at 766 (2) (B) ("If private papers constitute merely 'tangible evidence' of the commission of a crime, they are not seizable. [Cit.] But where the papers are the *instrumentalities* of the crime, they are properly seizable. . . ."); *Smith v. State*, 192 Ga. App. 298 (384 SE2d 459) (1989) ("[T]he concept of 'private papers' would include diaries, personal letters, and similar documents wherein the author's personal thoughts are recorded."); *Lowe v. State*, supra, 203 Ga. App. at 280 ("The creation of a 'private papers' exception by the Legislature pursuant to . . . OCGA § 17-5-21 was clearly intended to promote a privacy interest in the contents of documents which were not actual instrumentalities of a crime.") Even if papers and documents seized from defendant's prison cell are private papers, the seizure did not violate the statute because their content was not introduced and they were used only as handwriting exemplars); *Ledesma v. State*, supra, 251 Ga. at 890 (7) (a) (drug ledger and receipts are not "private papers"); *Grant v. State*, 198 Ga. App. 732 (2) (403 SE2d 58) (1991) (a checkbook was a "personal paper," the admission of which was harmless error).

Since the medical records that were the subject of the search warrant in the case at bar were neither the personal property of appellant nor were they seized from his possession, they did not constitute the "private papers" that are exempt from coverage of a search warrant in Georgia under OCGA § 17-5-21 (a) (5). Accordingly, the Court of Appeals did not err when it affirmed the trial court's denial of appellant's motion to suppress.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 12, 2010.

*Clark & Towne, David E. Clark, William D. Healan III*, for appellant.

*Rosanna M. Szabo, Solicitor-General, Karen M. Seeley, Gary S. Vey, Assistant Solicitors-General*, for appellee.

