## A10A1575. HAWKINS v. THE STATE.
(704 SE2d 886)

BLACKWELL, Judge.

Haley Hawkins was arrested and indicted for several violations and an attempted violation of the Georgia Controlled Substances Act.[1] Hawkins moved the trial court to suppress evidence of certain text messages that police obtained from her cell phone and the cell phone of another individual. Following an evidentiary hearing, the trial court denied her motion. She then sought immediate review in this Court, which we allowed. On appeal, Hawkins claims that the trial court erred in denying her motion to suppress because the seizure and search of her cell phone were unreasonable and because the police did not have the authority to send text messages to her,

---

[1] More specifically, she was charged with one count of unlawfully attempting to purchase a controlled substance in violation of OCGA § 16-4-1, one count of unlawfully using a communications facility in violation of OCGA § 16-13-32.3, and two counts of unlawfully possessing a controlled substance in violation of OCGA § 16-13-30.

and receive and read text messages from her, using the phone of the other individual. We see no error and affirm.

Viewed in the light most favorable to the disposition below,[2] the evidence adduced at the hearing on the motion to suppress shows that an officer with the Lowndes County Sheriff's Office was contacted by a mother, who said that numerous text messages about narcotics were being sent to her son's cell phone, and who delivered the cell phone to the officer. Sometime thereafter, the officer received a text message on this phone from Hawkins, who evidently believed she was communicating with the son. At the time, the officer did not know Hawkins's identity. Hawkins inquired in her text message whether the son had received certain controlled substances. Posing as the son, the officer responded by text message and asked how many of the pills Hawkins wanted to acquire. In reply, Hawkins asked how many pills were available, and the officer answered in another text message that he had about 25 pills. Hawkins then responded that she wanted all 25 pills and had the money to buy them. The officer and Hawkins continued to correspond by text messages and ultimately agreed to meet at a local restaurant that evening.

Prior to the time designated for the meeting, the same officer arrived at the restaurant and took up a surveillance position in its parking lot. He observed Hawkins drive into the parking lot shortly thereafter. He then observed Hawkins entering data into her phone, and he almost contemporaneously received another text message on the son's cell phone, in which Hawkins announced her arrival at the restaurant.

The officer approached Hawkins's vehicle, identified himself, and placed her under arrest for unlawfully attempting to purchase a controlled substance. Hawkins admitted to the officer that she was the person with whom he had exchanged text messages throughout the day. After Hawkins was asked for and gave her consent, and as an incident to her arrest, police searched Hawkins's vehicle and found her cell phone inside her purse. The officer searched for, and found on Hawkins's cell phone, the text messages that he had exchanged throughout the day with Hawkins. To preserve these text messages, the officer downloaded and printed them. Police did not obtain a warrant before arresting Hawkins, searching her vehicle, or searching the text messages stored on her phone.

1. Hawkins claims that the officer violated the Fourth Amend-

---

[2] On appeal from the denial of a motion to suppress, we construe the evidence "most favorably to uphold the findings and judgment of the trial court." *Sprinkles v. State*, 227 Ga. App. 112 (1) (488 SE2d 492) (1997).

ment when he seized her cell phone and searched the electronic data stored on it without first obtaining a warrant. We disagree.

As a general rule, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment[,] subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U. S. 347, 357 (88 SC 507, 19 LE2d 576) (1967). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U. S. 332 (129 SC 1710, 1716 (II), 173 LE2d 485) (2009). Here, the trial court properly found, and Hawkins does not dispute, that the officer lawfully arrested her for criminal attempt to purchase a controlled substance before searching the vehicle of which she was a recent occupant.

The Supreme Court in *Gant* said that when an officer lawfully arrests the occupant or recent occupant of an automobile, and "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle," the officer may search the passenger compartment of the vehicle for such evidence as an incident of the arrest, regardless of whether the officer has any reason to be concerned about the potential destruction of evidence.[3] *Gant*, 129 SC at 1714. Although *Gant* does not define the scope of such a search with precision, we know that it must be limited to a search for evidence of the crime of arrest. See id. at 1721 (IV). And the Supreme Court has told us that such a search is more limited in scope than a search based on probable cause that a vehicle contains evidence of criminal activity pursuant to *United States v. Ross*, 456 U. S. 798 (102 SC 2157, 72 LE2d 572) (1982), which permits a search of any place or thing in the vehicle that might contain any evidence of criminal activity. See *Gant*, 129 SC at 1721 (IV).

Although there is some uncertainty about the precise scope of a

---

[3] The special concurrence argues that we should consider whether some danger that the electronic data on the phone might be destroyed justified an immediate search. But a danger that evidence may be destroyed is not, according to *Gant,* the only circumstance in which a vehicle can be searched for evidence incident to arrest. And another such circumstance is present in this case — reasonable cause to believe that evidence of the crime of arrest would be found in the vehicle — so we do not need to consider whether the search also could be justified to prevent the imminent destruction of evidence.

Moreover, as the dissent observes, nothing in the record indicates that the arresting officer had any reason to be concerned that digital evidence on the cell phone might be destroyed before a warrant could be procured. The officer gave no testimony about whether Hawkins was in a place, at the time he searched the data stored on the cell phone, from which she might have intentionally destroyed or tampered with the data. In addition, the officer never said that a concern about preserving the evidence was a reason for his search of the electronic data, and he offered no testimony about his knowledge of cell phones and the ease with which data stored therein may be deleted. Finally, the State has never urged its unquestionable interest in preventing the imminent destruction of evidence as a justification for this search.

search for evidence under *Gant* in the absence of an imminent risk that evidence will be destroyed, we need not resolve that uncertainty today. The most restrictive plausible interpretation of *Gant* is that such a search is limited in scope to a search of places and things in a vehicle in which one reasonably might find the specific kinds of evidence of the crime of arrest that the officer has reason to believe may be found in the vehicle.[4] Even under this standard, the search of electronic data in this case was reasonable.

Here, on the day of the arrest, the arresting officer exchanged several text messages with Hawkins, in which they made plans to meet at a specific place and time, ostensibly to transact the purchase and sale of controlled substances. When Hawkins arrived at the place and time of the planned meeting in a car, the officer observed her entering data into her cell phone, and he contemporaneously received a text message from her, in which she announced her arrival. The officer then approached her car, observed her entering more data into her cell phone, and immediately arrested her for attempted possession of a controlled substance. And when she was arrested, Hawkins admitted to the officer that she was the person with whom he had been exchanging text messages. So, the officer had every reason to believe that evidence of the crime for which Hawkins was arrested — in the form of the text messages that Hawkins had sent to, and received from, the officer using the cell phone in her vehicle — would be found in the vehicle at the time of her arrest. Under a narrow reading of *Gant,* the officer was authorized to search for these text messages in any place in the vehicle in which the text messages reasonably might be found.

That the text messages were stored in electronic form in Hawkins's cell phone, rather than in plain view, does not deny the officer the right to discover them. When an officer is authorized to search in a vehicle for a specific object and, in the course of his search, comes across a container that reasonably might contain the object of his search, the officer is authorized to open the container and search within it for the object. See *Ross*, 456 U. S. at 824 (IV) ("The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the

---

[4] We do not mean to imply that this limited reading of *Gant* is the only interpretation, but we think it is a plausible one. Such a reading is consistent with *Ross*, supra, in which the Supreme Court said that the permissible scope of a search is defined by its object: "A lawful search of fixed premises generally extends to the entire area *in which the object of the search may be found*. . . . A warrant to search a vehicle would support a search of every part of the vehicle that *might contain the object of the search*." 456 U. S. at 820-821 (IV) (emphasis supplied).

places in which there is probable cause to believe that it may be found."); see also *Gant*, 129 SC at 1719 (III) ("[In some cases], the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle *and any containers therein* [for evidence of the crime of arrest].") (emphasis supplied). The pertinent question, in this case, then, is whether a cell phone is enough like a "container" to be treated like one in the context of a search for electronic data that might be stored on the phone. We think it is.

Although it is a matter of first impression for our Court, many other courts have addressed this issue. Most have concluded that, when a search for electronic data that might reasonably be stored in a cell phone is authorized, the cell phone is roughly analogous to an electronic "container" that properly can be "opened" and searched for the data, much as a traditional "container" can be opened to search for tangible objects within. See *United States v. Finley*, 477 F3d 250, 260 (III) (B), n. 7 (5th Cir. 2007); see also *United States v. Wurie*, 612 FSupp.2d 104, 109 (D. Mass. 2009) ("Decisions of district courts and Courts of Appeals (often analogizing cell phones to the earlier pager technology) trend heavily in favor of finding that the search incident to arrest . . . exception[ ] appl[ies] to searches of the contents of cell phones.") (citations omitted).[5] Federal courts in Georgia are among those that have reached this conclusion. See, e.g., *United States v. Cole*, 2010 U. S. Dist. LEXIS 82822 at *60-68 (7) (N.D. Ga. 2010) (concluding that the defendant's cell phone was a "container" for purposes of applying an exception to the warrant requirement since it contained information not readily apparent without manipulating the cell phone itself); *United States v. McCray*, 2008 U. S. Dist. LEXIS 116044 at *13 (S.D. Ga. 2008) (concluding that "[a] cell phone, like a beeper, is an electronic 'container,' in that it stores information that may have great evidentiary value (and that might easily be destroyed or corrupted)"). We are persuaded that, as a general matter, these decisions are correct.

Cell phones and other mobile electronic data storage devices, however, are unlike traditional "containers" in several respects, and for this reason, we must apply the principles set forth in traditional "container" cases to searches for electronic data with great care and

---

[5] See also *Silvan W. v. Briggs*, 309 Fed. Appx. 216, 225 (10th Cir. 2009); *United States v. Ortiz*, 84 F3d 977, 984 (7th Cir. 1996); *United States v. Salgado*, 2010 U. S. Dist. LEXIS 77266 at *9-12 (N.D. Ga. 2010); *United States v. Garcia-Aleman*, 2010 U. S. Dist. LEXIS 65333 at *29-37 (E.D. Tex. 2010); *United States v. Monson-Perez*, 2010 U. S. Dist. LEXIS 20575 at *21-23 (E.D. Mo. 2010); *Newhard v. Borders*, 649 FSupp.2d 440, 448 (W.D. Va. 2009); *Brady v. Gonzalez*, 2009 U. S. Dist. LEXIS 57836 at *8-10 (N.D. Ill. 2009); *United States v. Santillan*, 571 FSupp.2d 1093, 1102 (D. Ariz. 2008); *United States v. James*, 2008 U. S. Dist. LEXIS 34864 at *9-11 (E.D. Mo. 2008); *United States v. Fierros-Alvaraez*, 547 FSupp.2d 1206, 1214 (D. Kan. 2008); *United States v. Chan*, 830 FSupp. 531, 535-536 (N.D. Cal. 1993).

caution. A traditional "container" encloses tangible things and, therefore, can hold only a finite number of things and only things as voluminous as the physical volume of the container allows. An electronic "container," on the other hand, may contain innumerable electronic data of almost infinite variety in a volume having little, if any, relation to the physical size of the electronic "container." And, unlike a traditional "container," which simply contains whatever it contains, an electronic "container," through an Internet browser or other application, may have the capability to reach out and retrieve data from other places during the course of a search.

In addition, as the Supreme Court has recognized, vehicles and the traditional "containers" transported in them " 'seldom serve as ... the repository of [tangible] personal effects.' " *Wyoming v. Houghton*, 526 U. S. 295, 303 (II) (119 SC 1297, 143 LE2d 408) (1999). Electronic "containers," on the other hand — including small electronic "containers," such as cell phones, that frequently are transported in vehicles — often will contain the most sensitive kinds of personal information, in which individuals may reasonably have a substantial expectation of privacy and for which the law offers heightened protection. Indeed, it is easy to imagine that cell phones with text messaging or e-mail functionality — including the cell phone in this case — may contain a significant number of the electronic equivalent of private papers, which are exempted under Georgia law from the coverage of a search warrant when they merely are evidence of a crime. See *Brogdon v. State*, 287 Ga. 528, 533-534 (2) (697 SE2d 211) (2010); see also *Smith v. State*, 192 Ga. App. 298 (384 SE2d 459) (1989) ("[T]he concept of 'private papers' would include diaries, personal letters, and similar documents wherein the author's personal thoughts are recorded."). Moreover, such cell phones may very well contain privileged electronic communications, including communications between lawyers and clients, doctors and patients, and spouses.

Given the volume and diverse nature of data that may be contained in a cell phone or other mobile electronic data storage device, we think courts generally should, as one prominent commentator has put it, treat such a device "like a container that stores thousands of individual containers in the form of discrete files." Kerr, "Searches and Seizures in a Digital World," 119 Harv. L. Rev. 531, 555 (2005). Just because an officer has the authority to make a search of the data stored on a cell phone (that is, just because he has reason to "open" the "container") does not mean that he has the authority to sift through *all* of the data stored on the phone (that is, to open and view all of the sub-containers of data stored therein). Instead, his search must be limited as much as is reasonably practicable by the object of the search. See *Ross*, 456 U. S. at 824 (IV).

Although it may not always be possible at the outset of a search to immediately identify the specific data that is the object of the search without examining something more, it more often than not will be possible to narrow in some meaningful way the sub-containers that might reasonably contain the object of the search. Where the object of the search is to discover certain text messages, for instance, there is no need for the officer to sift through photos or audio files or Internet browsing history data stored on the phone.[6]

Applying these principles in this case, it seems quite clear that the search of the electronic data stored on Hawkins's cell phone was reasonable. The arresting officer searched for and found the specific text messages that he had good reason to believe were stored on the cell phone. The record made at the hearing on the motion to suppress does not suggest that the officer found or looked for any other data on the cell phone. Accordingly, the record shows that the search of data stored on the cell phone was limited in scope to a search for specific evidence of the crime for which Hawkins was arrested that the officer had good reason to believe was stored on the cell phone. For these reasons, the trial court did not err in finding that Hawkins's Fourth Amendment rights were not violated by the warrantless search of her cell phone.

2. Hawkins also claims on appeal that the evidence of the text messages should be suppressed because the officer did not have the authority to use the cell phone that the mother had delivered to him for the dual purposes of reading text messages that she sent (and intended for the son) and responding to these text messages (as if he were the son). We think this claim is without merit and does not warrant much discussion. Although Hawkins claims that the officer's conduct was comparable to a wiretap interception of a telephone conversation, it simply is not. It is more comparable to dialing a wrong number and speaking with someone that you believe is another. The

---

[6] By requiring that searches of electronic data be limited in this way, we give adequate guidance, we think, to law enforcement officers and judges. Although this approach admittedly requires a fact-specific assessment in each case of the reasonable scope of the search at issue, that is something with which both police officers and judges are accustomed to dealing. It is, we think, preferable to the approach proposed by the special concurrence, which would require police officers and judges to distinguish between "ordinary" cell phones and those with a "capacity comparable to that of a computer."

We also think that this approach keeps faith with the Fourth Amendment's prohibition of general and exploratory searches and addresses much of the potential mischief about which the dissent is concerned. We too would worry if officers were permitted without good cause or reason to rummage through all the data stored on a cell phone without limitation. But we sanction no such thing today, and we think our approach is adequate to prevent any such practice. We note also that the case on which the dissent principally relies – *State v. Smith*, 920 NE2d 949 (Ohio 2009) – does not involve a vehicle search and does not analyze whether *Gant* would justify the search at issue.

officer was a party to the text message communications, notwithstanding that Hawkins did not know his true identity at the time. For this reason, her contention that the officer violated OCGA § 16-11-62 (2) — which prohibits the use of any device to record the activities of another in a private place and out of public view without his consent — is without merit. See OCGA § 16-11-66 (a) ("Nothing in Code Section 16-11-62 shall prohibit a person from intercepting a wire, oral, or electronic communication where such person is a party to the communication. . . ."). Hawkins also argues that the officer violated the rights of the son by using his cell phone without his proper consent, but Hawkins has no standing to claim a violation of the constitutional rights of the son. See *English v. State*, 288 Ga. App. 436, 441 (3) (654 SE2d 150) (2007) ("Because Fourth Amendment rights are personal, a defendant may move to suppress evidence obtained through an illegal search and seizure only when his own rights were violated.").

3. Finally, Hawkins claims that the trial court erred when it concluded that she voluntarily consented to a search of the electronic data stored on her cell phone. In light of our disposition in Division 1, supra, we need not address whether the search of the cell phone might also be justified by her voluntary consent.

The trial court did not err in denying the motion to suppress.

*Judgment affirmed. Smith, P. J., Johnson and Dillard, JJ., concur. Miller, C. J., concurs specially. Barnes, P. J., and Phipps, P. J., concur in judgment only as to Divisions 2 and 3 and dissent as to Division 1.*

MILLER, Chief Judge, concurring specially.

I concur fully with respect to Divisions 2 and 3 of the majority opinion. I also concur in the judgment of the Court that the motion to suppress was properly denied since the limited search of the electronic data stored on Hawkins's cell phone was reasonable. In reaching this result, however, I apply a different analysis than the majority opinion. For this reason, I concur specially in Division 1.

The search incident to arrest exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U. S. 332 (129 SC 1710, 1716 (II), 173 LE2d 485) (2009). Because officer safety is not at issue in this case, I believe that this case must be analyzed in the context of whether the search of Hawkins's cell phone was for purposes of evidence preservation.

Generally, the permissible scope of a search incident to arrest has been extended to closed containers located on an arrestee's person. See *United States v. Robinson*, 414 U. S. 218, 233-234 (III) (94 SC 467, 38 LE2d 427) (1973) (discussing broad authority granted

to police officers when conducting a search incident to arrest to look for destructible evidence of the arrestee's crime on his person in order to preserve it for use at trial); *In the Interest of T. M.*, 303 Ga. App. 322 (693 SE2d 574) (2010) (incident to the defendant's arrest for marijuana possession, the officer lawfully searched a cell phone located in the defendant's pants pocket where a razor blade was found); *Bagwell v. State*, 214 Ga. App. 15, 16 (446 SE2d 739) (1994) (the officer was authorized to remove and open a closed metal container found in the defendant's pocket incident to his arrest).

As stated in the majority opinion, the question of whether or not a cell phone is analogous to a closed container falling within the scope of the search incident to arrest exception is an issue of first impression before this Court. Although other jurisdictions have addressed this issue, those decisions present a split in the authorities.[7] As stated in the majority opinion, I am persuaded that a cell phone should be treated as a closed container for purposes of our Fourth Amendment analysis.

Hawkins nevertheless argues that *State v. Smith*, 920 NE2d 949, 954-955 (4) (Ohio 2009), supports her argument that a cell phone is not analogous to a closed container because it is not capable of holding another physical object. See *New York v. Belton*, 453 U. S. 454, 460, n. 4 (101 SC 2680, 69 LE2d 768) (1981). As such, she argues that the police were required to obtain a search warrant to search its contents.[8] The dissent finds Hawkins's argument persuasive and concludes that a cell phone is more akin to a laptop computer, which

---

[7] Numerous jurisdictions have reached the conclusion that a cell phone or pager is analogous to a closed container for purposes of Fourth Amendment analysis. See *Silvan W. v. Briggs*, 309 Fed. Appx. 216, 225 (10th Cir. 2009); *United States v. Finley*, 477 F3d 250, 259-260 (5th Cir. 2007); *United States v. Ortiz*, 84 F3d 977, 984 (7th Cir. 1996); *United States v. Cole*, No. 1:09-CR-0412-ODE-RGV, 2010 U. S. Dist. LEXIS 82822, at *60-68 (7) (N.D. Ga. 2010); *United States v. Salgado*, No. 1:09-CR-454-CAP-ECS-5, 2010 U. S. Dist. LEXIS 77266, at *9-12 (N.D. Ga. 2010); *United States v. Garcia-Aleman*, No. 1:10-CR-29, 2010 U. S. Dist. LEXIS 65333, at *29-37 (E.D. Tex. 2010); *United States v. Monson-Perez*, No. 4:09CR623DJS(MLM), 2010 U. S. Dist. LEXIS 20575, at *21-23 (E.D. Mo. 2010); *Newhard v. Borders*, 649 FSupp.2d 440, 448 (W.D. Va. 2009); *Brady v. Gonzalez*, No. 08 C 5916, 2009 U. S. Dist. LEXIS 57836, at *8-10 (N.D. Ill. 2009); *United States v. McCray*, No. CR408-231, 2008 U. S. Dist. LEXIS 116044, at *9-14 (S.D. Ga. 2008); *United States v. Santillan*, 571 FSupp.2d 1093, 1102 (D. Ariz. 2008); *United States v. James*, No. 1:06CR134 CDP, 2008 U. S. Dist. LEXIS 34864, at *9-11 (E.D. Mo. 2008); *United States v. De Jesus Fierros-Alvaraez*, 547 FSupp.2d 1206, 1214 (D. Kan. 2008); *United States v. Chan*, 830 FSupp. 531, 535-536 (N.D. Cal. 1993).

Other jurisdictions, however, have distinguished cell phones from closed containers, pagers, and address books. See *United States v. Wall*, No. 08-60016-CR-ZLOCH, 2008 U. S. Dist. LEXIS 103058, at *9-13 (S.D. Fla. 2008); *United States v. Park*, No. CR 05-375 SI, 2007 U. S. Dist. LEXIS 40596, at *21-22 (N.D. Cal. 2007).

[8] In light of technological advances in electronic storage devices since *Belton* and evolving federal precedent on this issue, the fact that text messages are not a physical object is not a dispositive consequence.

is capable of storing large amounts of electronic data.

Certainly the members of this Court are well suited to decide issues of Fourth Amendment challenges regarding technological changes when the evidence of record is established. The dissent's claims to the contrary notwithstanding, however, there is no evidence in our record indicating that Hawkins's cell phone was similar to or possessed a capacity comparable to that of a computer. The evidence does, however, support a conclusion that a cell phone is akin to a closed container that stores files and electronic data.

Having concluded that Hawkins's cell phone was analogous to a closed container, I believe that the warrantless search of the cell phone's data was properly allowed for the purpose of evidence preservation. See *Gant*, supra; *United States v. Ortiz*, 84 F3d 977, 984 (7th Cir. 1996). The majority opinion analyzes this case based upon its interpretation of *Gant*. The dissent relies upon a different interpretation of *Gant* in reaching its conclusion that the scope of the warrantless search should be more restrictive.

In *Gant*, the Supreme Court ruled that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (Citation and punctuation omitted.) *Gant*, supra, 129 SC at 1719 (III). *Gant* does not change the black letter law establishing that police officers are authorized to conduct a search of a defendant or any instrument which may have been used to commit the crime that is found within the defendant's immediate presence or within the passenger compartment of a vehicle when the search is incident to arrest. See id. at 1718-1721 (III)-(IV). See also *Lopez v. State*, 267 Ga. App. 532, 538 (6) (601 SE2d 116) (2004).

Here, the evidence established that Hawkins had used the cell phone to exchange text messages with Investigator Denmark in furtherance of the drug activity. Indeed, Investigator Denmark had observed Hawkins using the cell phone to send text messages in coordination of the drug transaction while he was conducting surveillance of Hawkins immediately prior to the arrest. During the search incident to Hawkins's arrest, Investigator Denmark found Hawkins's cell phone in her purse and searched the text messages for evidence of the drug offense. Accordingly, these circumstances clearly establish that Hawkins was using her cell phone as an instrumentality of the crime. Further, it is unmistakable that the officer was not exercising unbridled discretion to rummage through the personal information contained in Hawkins's cell phone, but rather was preserving evidence of the crime for which Hawkins was

arrested.[9] See *United States v. Finley*, 477 F3d 250 (5th Cir. 2007); *Ortiz*, supra, 84 F3d at 984; *Lopez*, supra, 267 Ga. App. at 538 (6) (cell phone was instrumentality of crime of cocaine trafficking). Thus, having lawfully arrested Hawkins, Investigator Denmark was authorized to search the contents of her cell phone for evidence of a crime, and a search warrant was not required. OCGA § 17-5-1 (a) (4); *Belton*, supra, 453 U. S. at 458 (general requirement for a search warrant prior to search of container does not apply when container is seized incident to arrest); *Ortiz*, supra, 84 F3d at 984; *Lopez*, supra, 267 Ga. App. at 538 (6).

While I strongly believe in the protection afforded by the Fourth Amendment against unreasonable searches and seizures, I must conclude that the search of Hawkins's cell phone was not precluded in this instance. And as the majority correctly observes, the arresting officer had personally observed Hawkins use her cell phone to send text messages in the commission of the crime for which she was arrested. Accordingly, the arresting officer reasonably conducted a search for such messages in order to preserve the evidence. Consequently, the search of the contents of the cell phone for evidence of the crime was proper, and the trial court did not err in denying Hawkins's motion to suppress.

PHIPPS, Presiding Judge, concurring in part and dissenting in part.

I concur in judgment only in Divisions 2 and 3. I dissent to Division 1. I respectfully disagree with the majority regarding the reasonableness of the officer's search, without a warrant, of the electronic data stored on Hawkins's cell phone. I believe that this search violated the Fourth Amendment's prohibition against unreasonable searches, and consequently the trial court erred in denying Hawkins's motion to suppress the fruits of that search.

The state has not argued that Hawkins lacked a reasonable expectation of privacy in the data stored on her phone.[10] The United States Supreme Court has held that the analysis of a case addressing the reasonableness of a warrantless search should begin "with the basic rule that searches conducted outside the judicial process,

---

[9] Although the issue was not argued or decided in the trial court below, the text messages exchanged between Hawkins and Investigator Denmark ultimately may have been admissible under the inevitable discovery rule, to the extent that the same messages were also located on the cell phone that Investigator Denmark used during the exchange. See *Cunningham v. State*, 284 Ga. App. 739, 741 (644 SE2d 878) (2007) ("Under the inevitable discovery doctrine, if the State shows by a preponderance of the evidence that illegally obtained evidence would have been discovered inevitably by lawful means, the evidence is admissible.").

[10] See *United States v. Finley*, 477 F3d 250, 259 (III) (A) (5th Cir. 2007) (cell phone user had reasonable expectation of privacy in call records and text messages on phone).

without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."[11]

The trial court held that the warrantless search of the data in Hawkins's phone was permitted because Hawkins had consented to the search. The arresting officer testified that Hawkins "gave [him] consent to search her vehicle and purses." The state, however, justified its search of the data in the phone as one incident to arrest; it did not justify the search of the electronic data as based on consent, and the state did not present evidence demonstrating that Hawkins had given consent to a search that included the electronic data within her phone.[12]

The majority concludes that the warrantless search of the data on the cell phone was permitted under the search-incident-to-arrest exception on the grounds that the phone was found during a search of Hawkins's car incident to her arrest and the phone constituted a container, the contents of which were subject to search to the extent the officer had reason to believe they constituted evidence of the offense for which Hawkins was arrested. The majority cites *Arizona v. Gant*[13] for its conclusion. In that case, the United States Supreme Court reaffirmed its holding in *Chimel v. California*[14] that warrantless searches incident to arrest should be limited to those instances implicating interests either of officer safety or evidence preservation.[15] The Court in *Gant* also recognized a further basis for a warrantless search incident, concluding that, "[a]lthough it does not follow from *Chimel*, . . . circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."[16]

I disagree that, under *Gant*, the search of the data in Hawkins's phone was permitted under the search-incident-to-arrest exception. Neither of the *Chimel* justifications for such an exception was shown to exist here. The phone was no longer in Hawkins's possession or

---

[11] *Arizona v. Gant*, 556 U. S. 332 (II) (129 SC 1710, 173 LE2d 485) (2009) (citations and punctuation omitted); see *Teal v. State*, 282 Ga. 319, 322-323 (2) (647 SE2d 15) (2007).

[12] See *McNeil v. State*, 248 Ga. App. 70, 71-72 (545 SE2d 130) (2001) (intrusiveness of search conducted pursuant to consent is limited by permission granted, and only that which is reasonably understood from the consent may be undertaken); see also *Walker v. State*, 299 Ga. App. 788, 791-792 (2) (683 SE2d 867) (2009) (defendant's statement that he did not "have a problem" with an officer searching his pockets cannot be interpreted as consent for the officer to push defendant's abdomen, pull his waistband forward, and look down inside his pants at his crotch area).

[13] Supra.

[14] 395 U. S. 752, 763 (89 SC 2034, 23 LE2d 685) (1969).

[15] See *Gant*, 129 SC at 1716 (II), 1719 (III).

[16] Id. at 1719 (III) (citation and punctuation omitted).

control at the time of the search. The state offered no evidence that the data needed to be searched immediately to protect the arresting officers or to prevent the data's destruction.[17] And the court did not make any such finding or base its decision on this rationale.

I also believe that the evidence in this case did not show that the search was authorized as one implicating the "circumstances unique to the vehicle context" contemplated by *Gant* as the basis for a justification for a search separate from the purposes set forth in *Chimel*. The officer who seized the phone and searched the electronic data therein testified that he found the phone in Hawkins's purse, which he searched pursuant to her consent. He did not testify that he found the purse in Hawkins's vehicle, or that he seized and searched the data within the phone while searching Hawkins's *vehicle* for evidence of the offense of arrest. Instead, he testified that the vehicle search was performed by a different officer.

Moreover, I disagree with the majority's decision to analogize a cell phone to other types of "containers" so as to allow its electronic contents to be searched as part of a search incident to arrest.[18] Although the majority acknowledges that electronic storage devices such as cell phones differ from traditional "containers" in many significant respects, and attempts to limit the application of this analogy, for the following reasons I believe that even so limited an analogy is inappropriate.

Many modern cell phones "contain a wealth of private information such as recent-call lists, emails, text messages, and photographs."[19] Technological advances allow the storage of and access to more and more data on small devices capable of and indeed routinely being transported on their owners' persons, and such devices increasingly are designed and able to perform functions similar to those performed by computers.[20] This capacity of electronic devices such as cell phones to store and access vast amounts of private

---

[17] See *Ohio v. Smith*, 920 NE2d 949, 955 (4) (Ohio 2009) (where search of cell phone's contents was not necessary to ensure officer safety, and the state failed to present any evidence that information therein was subject to imminent destruction, officer could not conduct search of phone's contents incident to a lawful arrest without first obtaining a warrant). Compare *United States v. Ortiz*, 84 F3d 977, 984 (7th Cir. 1996) (noting that immediate retrieval of telephone numbers from a pager was necessary to preserve the evidence because existing information on the pager could be destroyed by incoming pages due to the finite nature of the pager's electronic memory, and because the contents of some pagers can be destroyed merely by turning them off).

[18] See *Bagwell v. State*, 214 Ga. App. 15, 16 (446 SE2d 739) (1994) (allowing officers to open and inspect containers as part of a search incident to arrest).

[19] *United States v. Quintana*, 594 FSupp.2d 1291, 1299 (III) (M.D. Fla. 2008) (citation and punctuation omitted).

[20] See generally *Smith*, supra at 954-955 (4) (cell phones defy easy categorization due to their unique nature as multifunctional tools).

information in an easily transportable format distinguishes such devices from the types of "containers" that Georgia cases have deemed subject to a warrantless search incident to arrest.[21] Unlike devices that store and access electronic data, containers designed or used primarily for physically holding objects are limited in their capacity by their physical dimensions.[22]

The decision in *United States v. Finley*,[23] cited by the majority, did not take this distinction into account; in determining that information within a cell phone could be searched without a warrant incident to arrest, the *Finley* court emphasized the fact that the device itself was found on the arrestee's person.[24] There is no reason, however, to afford greater Fourth Amendment protections to electronic data stored upon less portable devices such as a desktop computer than to the same or similar data stored upon smaller and more portable devices such as a cell phone. Thus, I find persuasive the opinion of the Ohio Supreme Court in *Ohio v. Smith*,[25] which held "that a cell phone is not a closed container for purposes of a Fourth Amendment analysis."[26] In so holding, the *Smith* court noted that the capacity of a modern cell phone to store "a wealth of digitized information wholly unlike any physical object found within a closed container" rendered the container analogy inapposite in determining whether that information could be searched without a warrant incident to arrest.[27] I believe that Georgia should follow the *Smith* analysis in addressing this issue of first impression.

In my view, the warrantless search of the data within the cell phone did not fall within the search-incident-to-arrest exception and was unreasonable under the Fourth Amendment, and for this reason I would reverse the trial court's denial of the motion to suppress the evidence obtained from this search.

I am authorized to state that Presiding Judge Barnes joins in this opinion.

---

[21] See, e.g., *Bagwell*, supra at 16 (involving three-and-one-half inch metal "screw-type" container found on arrestee's person).

[22] The Tenth Circuit noted that a device such as a computer flash drive, that is small enough to be carried on one's person on a key chain, can hold data equivalent to that stored on a laptop computer. See *United States v. Burgess*, 576 F3d 1078, 1090, n. 12 (10th Cir. 2009).

[23] Supra.

[24] See *Finley*, supra at 260, n. 7 (III) (B); see also *United States v. Chan*, 830 FSupp 531, 536 (B) (N.D. Cal. 1993) (noting that pager was found on defendant's person incident to arrest in determining that electronic contents therein could be searched).

[25] Supra.

[26] Id. at 954 (3).

[27] Id.

DECIDED DECEMBER 1, 2010 — 

*Langdale & Vallotton, Katherine A. Gonos*, for appellant.
*J. David Miller, District Attorney, Justo C. Cabral III, Assistant District Attorney*, for appellee.